

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-329-CR

RONNIE DURANT DEAVER                                    APPELLANT

V.

THE STATE OF TEXAS                                              STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

## OPINION

------------

Appellant Ronnie Durant Deaver appeals his conviction for possession of child pornography.  In one issue, he argues that his trial counsel provided him with ineffective assistance because they failed to challenge the admissibility of the video that contained the pornography.  We affirm.

## Background Facts

On the morning of February 27, 2007, Fort Worth Police Officer Joe Shipp learned that a fourteen-year-old girl named K.B.[1] ran away from her mother's home in Pasadena, Texas two days earlier and that her mother believed that she was at Deaver's home in Fort Worth.[2] Officer Shipp obtained Deaver's phone number, his address, and a detailed description of his truck, and then Officer Shipp went to Deaver's home. Deaver's front porch lights were on, and a television was on inside his home, but no one answered when Officer Shipp knocked on Deaver's door. Officer Shipp initially stayed at the home for approximately two hours, and on his way back to the home later that day, he saw Deaver driving his truck away from the home.

Deaver pulled into a convenience store, and when Officer Shipp walked up to Deaver's truck, he saw two children inside and discovered that one of them was K.B. and the other one was E.D. Officer Shipp saw Deaver place a cell phone in the center console of the truck. Officer Shipp then detained Deaver in the back of his patrol car to investigate the offense of harboring a runaway. Deaver told Officer Shipp that he was trying to remove K.B. from an abusive relationship and that he did not know why he had not called the police. He also told Officer Shipp that he was

---

[1] To protect the privacy of the individuals involved in this appeal who are minors, we identify them by initials only.

[2] Deaver and his six-year-old daughter, E.D., had visited K.B. and her mother the month before.

2

asleep while Officer Shipp waited at his home for two hours, but when Officer Shipp said that he saw Deaver's bed inside the home (which Deaver was apparently not lying on), Deaver said that he "didn't know why he didn't answer the door." At that time, because Officer Shipp determined that Deaver was answering his questions falsely and because K.B. was with Deaver, he placed Deaver under arrest for harboring a runaway.

Because Officer Shipp concluded that K.B. needed to return to her mother in Pasadena and that there was no one available to take care of E.D., he asked Deaver for a number that Officer Shipp could use to contact E.D.'s mother (Deaver's ex-wife) so that she could come pick up E.D. Deaver said that he did not know the number, so Officer Shipp gave Deaver his cell phone from the truck to find it. Officer Shipp eventually retrieved Deaver's phone and saw child pornography on it, and then Fort Worth Police Detective Sherry Kelly told Officer Shipp to transport Deaver and both girls to her office.[3] Detective Kelly spoke with K.B. for about an hour, and then she spoke with Deaver. K.B. apparently told Detective Kelly about a sexual relationship with Deaver. Deaver denied having such a relationship but told Detective Kelly about other aspects of his relationship with K.B. and her mother, Audrey (or "Auddie"),[4] and he told Detective Kelly, among other things, that he had visited K.B.

_____

[3] ... More details about the discovery of child pornography on Deaver's phone are set forth below.

[4] ... Deaver met Audrey on a telephone chat line a few years before his arrest in this case. Audrey sometimes watched E.D. for Deaver before Audrey and K.B.

and Audrey the previous weekend, that K.B. and Audrey had a strained relationship, and that K.B. had put some videos on his cell phone but that he did not know of any pornographic videos on his phone.

Eventually, Detective Kelly obtained a warrant to search Deaver's cell phone. Fort Worth Police Detective Troy Lawrence, who testified as an expert for the State at trial, received the warrant and extracted videos from the phone, including the fifteen-second pornographic video at issue in this case—created one night in January 2007—of K.B. "exposing her unclothed breasts and genitalia."[5] K.B., Audrey's older daughter named Maygan, and E.D. were in the room in Audrey's apartment when the video was created.

In December 2007, a Tarrant County grand jury indicted Deaver with possession of child pornography. *See* Tex. Penal Code Ann. § 43.26(a) (Vernon 2003).[6] The parties filed various pretrial documents, and then Deaver's trial began in September 2008. Two attorneys appeared as Deaver's counsel. After the jury found Deaver guilty and heard evidence during the punishment phase of the trial

---

moved to Pasadena. Once they moved to Pasadena, Deaver and E.D. visited them about once a month.

[5] Deaver has not contested on appeal that the video at issue contained child pornography, that it came from and was recorded by his cell phone, or that he knew that the video was stored on his phone.

[6] Possession of child pornography is a third-degree felony that carries a punishment range of two to ten years' confinement. Tex. Penal Code Ann. §§ 12.34(a), 43.26(d) (Vernon 2003).

4

about various aspects of his background, it assessed six-and-a-half years' confinement. Deaver filed his notice of appeal.

## Ineffective Assistance of Counsel

In one issue, Deaver argues that his trial counsel were ineffective under the Texas and federal constitutions because they did not object to the admission of the video extracted from Deaver's cell phone on the basis of an allegedly unconstitutional search of the phone.[7] Specifically, Deaver contends that his counsel were required to use all legal means to have the video suppressed and that the evidence clearly indicates that Officer Shipp searched his cell phone to find the video and did not have a warrant or any other legal justification to do so.

### Standard of review and applicable law

The standard for ineffective assistance of counsel is the same under the Texas and federal constitutions. *Hernandez v. State*, 726 S.W.2d 53, 56–57 (Tex. Crim. App. 1986); *Lemmons v. State*, 75 S.W.3d 513, 526 (Tex. App.—San Antonio 2002, pet. ref'd). To establish ineffective assistance of counsel, Deaver must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064

---

[7] After a voir dire examination of the State's witness, Deaver's counsel objected to the video's admission on nonconstitutional grounds, including the video's alleged noncompliance with the best evidence rule.

5

(1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065.

Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 63. A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim. *Thompson*, 9 S.W.3d at 813–14. "In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions." *Salinas*, 163 S.W.3d at 740 (quoting *Mallett*, 65 S.W.3d at 63).

To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id.* (quoting *Thompson*, 9 S.W.3d at 813). It is not appropriate for an appellate court to simply infer

6

ineffective assistance based upon unclear portions of the record. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair and reliable trial. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. In other words, Deaver must show there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. *See id.* at 694, 104 S. Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding in which the result is being challenged. *Id.* at 697, 104 S. Ct. at 2070.

To succeed on his ineffective assistance claim based on counsel's alleged failure to attempt to suppress evidence, Deaver must rebut the presumption of proper police conduct and prove that a motion to suppress would have been granted. *See Jackson v. State*, 973 S.W.2d 954, 956–57 (Tex. Crim. App. 1998) (affirming the appellant's conviction when the facts surrounding the search were not sufficiently developed) (citing *Jackson v. State*, 877 S.W.2d 768 (Tex. Crim. App. 1994)); *see also Ortiz v. State*, 93 S.W.3d 79, 93 (Tex. Crim. App. 2002), *cert. denied*, 538 U.S. 998 (2003). In other words, "[t]o prevail on his claim of ineffective assistance of counsel[,] [Deaver has] the burden to develop facts and details of the search sufficient to conclude that the search was invalid," and mere "questions about

7

the validity of the search" are not enough. *Jackson*, 973 S.W.2d at 957; *see Lesso v. State*, 295 S.W.3d 16, 21 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd); *Hollis v. State*, 219 S.W.3d 446, 456 (Tex. App.—Austin 2007, no pet.) (reiterating that the appellant has the burden of developing facts about the search).

**Analysis**

Deaver's contention that his trial counsel should have moved to suppress the cell phone video because it was discovered during an allegedly unauthorized search is, of course, dependent on his establishing that a search in fact occurred. *See Jackson*, 973 S.W.2d at 957. The State asserts, in part, that the record does not provide sufficient evidence that Officer Shipp searched Deaver's phone. We agree with the State.

A "search" occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. *Kyllo v. United States*, 533 U.S. 27, 33, 121 S. Ct. 2038, 2042 (2001); *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S. Ct. 1652, 1656 (1984). If an item is in plain view, neither its observation nor its seizure involves any invasion of privacy. *Hill v. State*, 303 S.W.3d 863, 873 (Tex. App.—Fort Worth 2009, pet. ref'd); *see Walter v. State*, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000); *see also McCall v. State*, 540 S.W.2d 717, 720 (Tex. Crim. App. 1976) (stating that it "is simply not a search to observe that which is open to view"); *Duhig v. State*, 171 S.W.3d 631, 636–37 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (explaining that a "search implies a prying into hidden places for that which is

8

concealed" and holding that a plain-view observation of marijuana and drug paraphernalia was not a search).

The rationale of the plain view doctrine is that if contraband is in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no "search" within the meaning of the Fourth Amendment. *Hill*, 303 S.W.3d at 873; *see Illinois v. Andreas*, 463 U.S. 765, 771, 103 S. Ct. 3319, 3324 (1983). An object is seized in plain view if three requirements are met. *Hill*, 303 S.W.3d at 873; *see Keehn v. State*, 279 S.W.3d 330, 334 (Tex. Crim. App. 2009). First, law enforcement officials must lawfully be where the object can be "plainly viewed." *Keehn*, 279 S.W.3d at 334 (citing *Horton v. California*, 496 U.S. 128, 136, 110 S. Ct. 2301, 2311 (1990)). Second, the "incriminating character" of the object in plain view must be "immediately apparent" to the officials. *Id.* Third, the officials must have the right to access the object. *Id.*

Officer Shipp's testimony during the State's direct examination at trial concerning what happened when he gave Deaver's cell phone to Deaver to find E.D.'s mother's number is as follows:

> Q.    And at that point what did he do?
>
> A.    He said he was going to get me the phone number so I could contact the mother. He started punching the buttons on it like what I thought was scrolling through a phone list to get a phone number. This went on for about 45 seconds.

9

Q.    Okay.  Did you become concerned that something was being deleted or making contact?  Were you concerned?

A.    Yes, ma'am.  I -- I looked back there and it looked -- when someone is going through a phone list, they are hitting a phone list over and over and over, and he was hitting multiple buttons. . . .

. . . .

A.    At that point I was afraid he may have been making a text message to someone in regards to, "I'm being arrested" or something like that, looking for outside help.  So for officer safety reasons, I went to get the phone from him.[8]

*Q.    When you got the phone back, did you discover there were images on the phone?*

*A.    Yes, ma'am.*[9] [Emphasis added.]

As can be seen, this evidence does not explicitly reveal what actions Officer Shipp took, if any, between the time that he regained control of Deaver's phone and the time that he discovered pornography on the phone.

---

[8] ... Deaver has not contested the legal justification of Officer Shipp's retrieval of Deaver's cell phone for officer safety reasons or his counsel's trial strategy or conduct with respect to that retrieval.

[9] ... The State concedes that the "images" that Officer Shipp saw were pornographic.  Although the record does not explicitly state that Officer Shipp saw pornography on Deaver's cell phone, the record does reveal that after seeing the "images" on Deaver's phone, Officer Shipp seized the phone and directed dispatch to call the Crimes Against Children Unit.  Detective Kelly, who was assigned to that unit, told officers to transfer Deaver, E.D., and K.B. to the unit in separate vehicles because she had concerns of "additional abuse" involving K.B. that were unrelated to her being a runaway.  Detective Kelly then asked Deaver about nude images of K.B. during Deaver's interrogation.

Detective Lawrence and Deaver's expert—Daniel Fitzgerald—testified that there is no pornography on the first frame of the video at issue, so the pornographic nature of the video would not be immediately discernable if someone was just scrolling through the various videos on Deaver's phone. In other words, to find that the video contains pornography, it must actively be played. Deaver asserts that this is evidence that Officer Shipp could not have seen the pornographic video without searching the phone to play the video. But the evidence does not preclude the possibility that Deaver played the video—advertently or inadvertently (for instance, while trying to delete the video before giving the phone back to Officer Shipp, as the State theorizes)[10] —and that Officer Shipp immediately saw the video playing upon retrieving the phone from Deaver. The experts could not testify that Officer Shipp searched Deaver's phone because they were not present when Officer Shipp saw the child pornography. The crux of the experts' testimony is only that the cell phone video had to be played to see pornography; the experts could not determine who played the video.

If Officer Shipp was initially justified in gaining control over Deaver's phone for safety reasons (Deaver has not argued that he was not), and if Officer Shipp immediately saw the pornographic video upon controlling the phone (as may or may

---

[10] ... The evidence showed that Deaver's cell phone saved videos in numerical sequential order. The pornographic video at issue was "Video 002." Video 001 (which had undeterminable content) was not on the phone when Officer Shipp regained control of it.

11

not have happened based on the limited, unclear record),[11] then a motion to suppress would not have succeeded because the video was in plain view, no invasion of Deaver's privacy could be shown, and no search could have therefore occurred. *See Keehn*, 279 S.W.3d at 334; *Walter*, 28 S.W.3d at 541; *Hill*, 303 S.W.3d at 873. Because Deaver therefore cannot demonstrate, on this ambiguous record, that his counsel's motion to suppress would have been successful, we overrule his sole issue of ineffective assistance. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Jackson*, 973 S.W.2d at 956–57; *see also Mata*, 226 S.W.3d at 432 (explaining that we cannot infer ineffective assistance from unclear portions of the record).

### Conclusion

Having overruled Deaver's only issue, we affirm the trial court's judgment.

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and MCCOY, JJ.

DAUPHINOT, J. filed a concurring opinion.

PUBLISH

DELIVERED: April 22, 2010

---

[11] Officer Shipp might in fact have found the video while combing through all parts of Deaver's phone upon gaining control of it to look for evidence regarding the harboring of a runaway offense, to relieve his safety concerns, or for other reasons. However, the record at trial is simply too undeveloped to prove that this occurred. *See Jackson*, 973 S.W.2d at 956–57.

12


### NO. 2-08-329-CR

RONNIE DURANT DEAVER                                APPELLANT

V.

THE STATE OF TEXAS                                    STATE

------------

## FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

## CONCURRING OPINION

------------

The only evidence before this court is that the State and the defense experts viewed the pornographic images at the same time. There is no evidence that Officer Shipp ever viewed pornographic images, only images. Officer Lawrence viewed the contents of the cell phone pursuant to a search warrant, which was never challenged. I would therefore hold that the record is inadequate to show that trial counsel rendered ineffective assistance of counsel. Trial counsel had no opportunity to explain his trial strategy, but it is certainly reasonable that a lawyer would not want to call the jury's attention to the existence of pornography when the State had not

proved its existence. Nor did trial counsel have the opportunity to explain his strategy regarding the absence of a motion to suppress. But it is reasonable trial strategy to wait until trial to object to evidence because the State has no appeal of an evidentiary ruling made during trial.

Because the trial record is inadequate to support a claim of ineffective assistance of counsel, I would not assume what the record does not clearly reflect. I therefore concur in the result only.

LEE ANN DAUPHINOT
JUSTICE

PUBLISH

DELIVERED: April 22, 2010

2