MARK T. PITTMAN, JUSTICE
A jury found Appellant Eddie Offiong Ette guilty of the first-degree offense of misapplying more than $200,000 of fiduciary property. See Tex. Penal Code Ann. § 32.45(b), (c)(7) (West 2016).[1] The jury then assessed Appellant's punishment at ten years' confinement and a $10,000 fine, recommending the suspension of the confinement but not the fine. In two points, Appellant contends that (1) the trial court violated his right to confrontation and right to present a defense by limiting his cross-examination, and (2) the $10,000 fine assessed in the written judgment must be deleted because the trial court's oral pronouncement of sentence did not mention the fine. Because we hold that the trial court did not violate Appellant's rights to *786 confrontation and to present a defense by limiting his cross-examination of the complainant and we uphold the lawful fine imposed by the jury, we affirm the trial court's judgment as corrected.
I. Background Facts
Appellant does not contest the sufficiency of the evidence. The evidence showed that complainant Nosa Evbuomwan and his wife, Ann, paid Appellant, who operated an insurance agency, $350,000 to procure two performance bonds. Appellant sent Nosa invoices showing that the gross premium for the two bonds was $379,000, that he applied a "discount" of $31,000 to the larger bond, and that his fee for each bond was $1,000. The Evbuomwans paid the $350,000, but Appellant failed to procure the two performance bonds. Instead of then returning the premiums, he claimed that the entire $350,000 was his fee and spent the money.
II. Discussion
A. The Trial Court Did Not Abuse Its Discretion or Violate Appellant's Rights to Confrontation and to Present a Defense by Limiting His Cross-Examination of Nosa.
In Appellant's first point, he contends that the trial court violated his right to confrontation and to present a defense when it limited the scope of his cross-examination of Nosa. We disagree.
1. Standard of Review
We review a trial court's ruling on the admissibility of evidence under an abuse-of-discretion standard. Johnson v. State (Johnson I) , 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). A trial court abuses its discretion when its decision falls outside the zone of reasonable disagreement. Id. If the trial court's ruling is correct under any applicable legal theory, we will not disturb it even if the court gave a wrong or insufficient reason for the ruling. Id. A trial court's discretion to exclude evidence comes into play only after the Sixth Amendment right to cross-examination has been satisfied. Johnson v. State (Johnson II) , 433 S.W.3d 546, 551 (Tex. Crim. App. 2014).
2. Right of Confrontation
The Sixth Amendment's Confrontation Clause states that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. Amend. VI. The Confrontation Clause's primary purpose is to secure for the defendant the opportunity to cross-examine adverse witnesses because that is "the principal means by which the believability of a witness and the truth of his testimony are tested." Johnson I , 490 S.W.3d at 909 (internal quotation marks omitted) (quoting Davis v. Alaska , 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974) ). Jurors deserve to have the theory of the defense presented to them "so that they (can) make an informed judgment as to the weight to place on (the witness'[s] ) testimony." Id. (internal quotation marks omitted) (quoting Davis , 415 U.S. at 317, 94 S.Ct. at 1111 ).
As the Texas Court of Criminal Appeals has held, the Sixth Amendment right to cross-examine witnesses allows a party to attack the general credibility of those witnesses "or to show their possible bias, self-interest, or motives in testifying." Hammer v. State , 296 S.W.3d 555, 561 (Tex. Crim. App. 2009) (citing Davis , 415 U.S. at 316, 94 S.Ct. at 1110 ). A trial court may not prevent a defendant from pursuing a line of cross-examination which might provide a reasonable jury with a significantly different impression of the witness's credibility. Johnson II , 433 S.W.3d at 551.
It is not within a trial court's discretion to prohibit a defendant from engaging in otherwise appropriate cross-examination designed to show a witness's bias. Id. This check on "a trial court's discretion to limit cross-examination for bias appropriately accounts for the fact that ... expos[ing] ... a witness'[s] motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination ... and is always relevant" to the jury's view of the witness's credibility and the weight to be given to the witness's testimony. Id. (internal quotation marks omitted). A trial court can abuse its discretion by excluding admissible evidence that the defendant offers to show the complainant's motive to falsely accuse him. Johnson I , 490 S.W.3d at 909.
If a complainant's credibility is central to the State's case, Texas law also favors admitting evidence that is relevant to the complainant's bias, interest, or motive to testify in a particular way. Id. at 910. The Texas Rules of Evidence generally "permit (a) defendant to cross-examine a witness for his purported bias, interest, and motive without undue limitation or arbitrary prohibition." Id. (internal quotation marks omitted) (quoting Hammer , 296 S.W.3d at 563 ).
*787 But "the right to cross-examine is not unqualified." Id. at 909. A trial court may restrict "the scope and extent of cross-examination so long as those" restrictions do not chip away at "the Confrontation Clause's guarantee of an opportunity for effective cross-examination." Id. (internal quotation marks omitted) (quoting Johnson II , 433 S.W.3d at 552 ). The defendant is not entitled to cross-examine a witness in whatever way and to whatever extent he might wish. Id. at 909-10. Trial courts have "wide latitude under the Confrontation Clause to ... restrict[ ] ... cross-examination based on such criteria as harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant." Id. at 910 (internal quotation marks omitted) (quoting Delaware v. Van Arsdall , 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986) ). A defendant does not have an absolute right to impeach a witness's general credibility. Id. (citing Hammer , 296 S.W.3d at 562-63 ).
3. Right to Present a Defense
The Supreme Court has recognized that under the United States Constitution, whether through "the Due Process Clause of the Fourteenth Amendment or the Compulsory Process or Confrontation Clauses of the Sixth Amendment," a defendant in a criminal case is entitled to "a meaningful opportunity to present a complete defense." Holmes v. State , 323 S.W.3d 163, 173 (Tex. Crim. App. 2010) (op. on reh'g) (internal quotation marks omitted) (quoting Holmes v. South Carolina , 547 U.S. 319, 324, 126 S.Ct. 1727, 1731, 164 L.Ed.2d 503 (2006) ). That right encompasses calling his own witnesses and cross-examining the State's. See id.
4. Analysis
a. Relevant Facts
Nosa and Ann bought a piece of property and had it platted into three lots. They wanted to build two commercial buildings, one at 1940 Enchanted Way and the other at 1900 Enchanted Way in Grapevine, Texas. Ann met with Appellant because the couple needed a performance bond for the construction of each building.
The dispute leading to Appellant's indictment was whether his fee for the two bonds was $2,000 or $350,000. The jury heard testimony that bond fees must be disclosed in writing. Appellant testified at trial and admitted that the paperwork-written invoices that he generated-showed that his total fee was only $2,000.
b. The Excluded Evidence
Appellant sought to impeach Nosa by demonstrating that he had made contradictory claims about whether a $900,000 debt on the third lot-1920 Enchanted Way-had been paid. Before the jury, Nosa testified that he had repaid the indebtedness, but the debt was also listed in a bankruptcy petition. Outside the jury's presence, the following occurred:
[DEFENSE COUNSEL]: Well, I mean, it-[the $900,000] was listed in a bankruptcy petition, which is kind of not the same as being paid back.
THE COURT: I don't know if it was paid back or not. It could have been paid-still just because it was listed in a bankruptcy petition doesn't mean necessarily that it was not paid back but go ahead, what's the-what's the relevance here[?] ... I take it you want to introduce the bankruptcy petition[,] correct[?]
[DEFENSE COUNSEL]: Well, I, you know, yeah, of course, I would like to do that but I think that I at least get to impeach him with it.
THE COURT: So you're offering it for impeachment value or are you offering it for- *788 [DEFENSE COUNSEL]: For impeachment, Your Honor.
[PROSECUTOR]: Your Honor, we would object that it would be improper impeachment items and it is not relevant. The reason, it would be improper impeachment is, since the bankruptcy was discharged, that's not evidence the loan was not paid back, that is evidence of nothing. We already know there is $900,000 indebtedness. This proves it was-it adds nothing to the argument, nothing to the case. If he says he paid the money back, that's the relevant question, not, well, didn't you still owe it in 2009.
THE COURT: Why don't you develop it a little more on cross outside the presence of the jury, [counsel]?
....
VOIR DIRE EXAMINATION
BY [DEFENSE COUNSEL]:
Q. About June 1st of 2009, did Agape World Group Incorporated[2 ] file a petition in bankruptcy?
A. I don't remember the date but yes....
....
Q. And in this petition, were there listed certain creditors? Yes?
A. Yes.
Q. .... Surely, you knew that this bankruptcy was being filed, right?
A. Yes.
Q. And then listed in Schedule A under Real Property, there is 1920 Enchanted Way, $1.5 million which you presumed was the value?
A. Yes.
Q. And the amount of secured claim was $900,000, isn't that true?
A. Yes.
Q. And, in fact, 19-1920 Enchanted Way, as of June 1st of 2009, did you-all still own 1920 Enchanted Way?
....
A. Yes.
Q. And so you listed that as an asset, and you listed the amount of secured claim as $900,000?
A. Correct.
Q. And so take us through how you paid it back. Did this get discharged in bankruptcy or did that-that get bought out of bankruptcy?
A. The bankruptcy was withdrawn.
THE COURT: Hang on. We are far afield as to what-no we are not going to go down this road because whether or not [Nosa] paid back the [$]900,000 is irrelevant as to whether or not [Appellant] took $300,000 of their money. I don't understand why-why we're going down this road. Why are we going down this road?
[DEFENSE COUNSEL]: Your Honor, he opened the door to every bit of this.
THE COURT: How?
[DEFENSE COUNSEL]: I'd have to have you read back the last hundred questions and answers both on Direct and on Cross.
THE COURT: Well, you're the one that started down this road of how much debt they had, so what-whether or not it was discharged from bankruptcy, whether or not it was paid back is-has nothing to do with this indictment, so why are we going into it?
[DEFENSE COUNSEL]: It's a matter of credibility, Your Honor.
THE COURT: No.
*789 [DEFENSE COUNSEL]: He opened the door to it.
THE COURT: No, we're not doing that.
[DEFENSE COUNSEL]: I'm [questioning] him about bias and prejudice.
THE COURT: We are going to land this thing today one way or another. Bring the jury back in.
[DEFENSE COUNSEL]: It's also questioning about motive, Your Honor.
THE COURT: No. You haven't established that either.
Bring them back in.
Defense counsel then resumed his cross-examination in the jury's presence.
c. The Excluded Evidence Is Not Relevant.
Appellant claims in his brief that the excluded evidence concerns "one of the subject properties." In fact, the evidence concerns the third lot from the original undivided piece of land the Evbuomwans bought. Ann testified about the third lot, located at 1920 Enchanted Way, but that lot was self-financed by the couple; it had nothing to do with the bonds they sought from Appellant.
d. The Excluded Evidence Has No Bearing on Appellant's Guilt.
At trial, Appellant cross-examined both Nosa and Ann extensively, and his cross-examination delved into the integrity of their business practices. In his closing argument of the guilt phase, Appellant argued that those business practices were highly suspect and that the Evbuomwans' testimony could not be believed.
Even if Appellant was correct in that assessment, though, the case did not turn on the couple's credibility-it turned on the paperwork. Appellant's own invoices provided that $348,000 of the $350,000 was to be used toward the two performance bonds' premiums and only $2,000 of the $350,000 was apportioned to pay his fees.
e. The Trial Court's Exclusion of the Evidence Did Not Violate Appellant's Constitutional Rights.
We hold that the trial court did not violate Appellant's rights of confrontation and to present a defense by refusing to let him cross-examine Nosa about possible misrepresentations concerning another property unrelated to the bonds and unrelated to the documents prepared by Appellant regarding his fees for those bonds. See Johnson I , 490 S.W.3d at 909-10 ; see also Palmer v. State , Nos. 01-10-00280-CR, 01-10-00281-CR, 2010 WL 1729338, at *16 (Tex. App.-Houston [1st Dist.] Apr. 29, 2010, no pet.) (mem. op., not designated for publication) (citing United States v. Scheffer , 523 U.S. 303, 308, 118 S.Ct. 1261, 1264, 140 L.Ed.2d 413 (1998), and Hammer , 296 S.W.3d at 564-65 ) (stating that excluding evidence offered only to challenge the witness's general credibility does not violate the Confrontation Clause or the defendant's right to present a defense).
We overrule Appellant's first point.
B. We Reconcile the Jury Verdict on Punishment, the Oral Pronouncement, and the Judgment to Uphold the Fine.
In Appellant's second point, he contends that because the trial court did not orally pronounce the $10,000 fine during sentencing, the fine must be deleted from the judgment. We disagree.
1. Courts Uphold the Lawful Fine Imposed by the Jury When the Trial Judge Inadvertently Omits It from the Oral Pronouncement.
When the trial judge's oral pronouncement of the punishment assessed by the jury inadvertently omits the lawful fine *790 determined by the jury, we harmonize the record before us-the jury verdict, the trial court's pronouncement, and the written judgment-to protect the valid jury verdict. See Hawkins v. State , No. 02-15-00338-CR, 2016 WL 4474351, at *7-8 (Tex. App.-Fort Worth Aug. 25, 2016, pet. ref'd) (mem. op., not designated for publication); Kimble v. State , No. 02-15-00370-CR, 2016 WL 2840922, at *2 (Tex. App.-Fort Worth May 12, 2016, pet. ref'd) (mem. op., not designated for publication); Hernandez v. State , No. 02-12-00392-CR, 2014 WL 1510093, at *2-3 (Tex. App.-Fort Worth Apr. 17, 2014, no pet.) (mem. op., not designated for publication); accord Cazares v. State , No. 05-15-00231-CR, 2016 WL 3144274, at *1-2 (Tex. App.-Dallas June 6, 2016, no pet.) (mem. op.); Simmons v. State , No. 05-15-00162-CR, 2016 WL 3144254, at *2 (Tex. App.-Dallas June 6, 2016, no pet.) (mem. op., not designated for publication); Jackson v. State , No. 05-13-00004-CR, 2014 WL 2611106, at *7-9 (Tex. App.-Dallas June 11, 2014, no pet.) (mem. op., not designated for publication); Neal v. State , No. 08-07-00232-CR, 2010 WL 160206, at *9-10 (Tex. App.-El Paso Jan. 13, 2010, pet. ref'd) (not designated for publication).
2. The Sentencing Facts Here Are Substantially the Same as Kimble's Facts.
Appellant elected to be punished by the jury. The jury assessed his punishment at ten years' confinement and a fine of $10,000, well within the range of punishment for a first-degree felony. See Tex. Penal Code Ann. § 12.32 (West 2011). The trial court received and accepted the verdict and read it aloud:
THE COURT: Note from the jury: "We have reached a decision." Signed by the foreman of the jury.
Both sides ready to bring the jury in, receive and accept the verdict?
....
THE COURT: Mr. Foreperson, we received a note. "The jury has ... reached a verdict." Have you reached a verdict on punishment?
FOREMAN: Yes, we have.
THE COURT: Is it a unanimous verdict?
FOREMAN: Yes, it is.
THE COURT: Hand the verdict to the bailiff, please.
Verdict form: We, the jury, having found [Appellant] guilty of the offense of misapplication of fiduciary property as charged in the indictment, assess his punishment at confinement in the Correctional Institutions Division of the Texas Department of Criminal Justice for 10 years and we do recommend that the imposition of his sentence be suspended and that he be placed on community supervision. In addition thereto, we, the jury, assess a fine of $10,000 and we do not recommend that such fine be suspended. Signed by the foreman of this jury.
After offering the parties a chance to poll the jury, which they declined, the trial court asked Appellant to rise and stated:
The jury ... having assessed your punishment at 10 years' confinement in the penitentiary and having recommended that your sentence be suspended, your sentence is hereby suspended and you will be placed on community supervision for a period of 10 years.
The trial judge omitted any mention of the lawful fine assessed by the jury from his repeated report of the jury verdict, though he had just read the entire verdict aloud and accepted it, and then he also omitted any mention of a fine from his pronouncement. He did not pronounce the $10,000 fine that the jury had assessed and he had accepted and recited to the jury; he did not pronounce a different fine; he did not pronounce a "zero" fine; and he did not *791 refuse to pronounce a fine. His pronouncement, taken alone, does not reveal any clear intent regarding the fine.
Unlike the oral pronouncement, the written judgment matches the lawful jury verdict, and the bill of cost also reflects the $10,000 fine due.
These facts alone create a potential ambiguity in the sentence and justify resolving the case in favor of the jury verdict. See, e.g. , Kimble , 2016 WL 2840922, at *2 ; see also Milczanowski v. State , 645 S.W.2d 445, 447 (Tex. Crim. App. 1983) (explaining that in jury cases, "the written verdict provides the basis for reforming an erroneous recitation in judgment and sentence").
3. Appellant and the Trial Judge Signed Written Conditions of Community Supervision Requiring Appellant to Pay the $10,000 Fine.
The record here, however, offers even more compelling evidence of not only the trial court's intent to follow the law and therefore to impose the lawful fine determined by the jury but also the satisfaction of Appellant's rights to notice and due process. Immediately following the oral pronouncement, the trial court stated,
Terms and conditions of your supervision are set out in the Court's documents, which I will give you in a few minutes, and you are ordered by the Court to follow each and every one of those conditions. If you violate any one of the terms and conditions, your probation may be revoked and you have to serve a term of incarceration.
....
Do you understand your sentence, [Appellant]?
THE [APPELLANT]: Yes, Your Honor.
....
THE COURT: [Appellant], please stay around long enough to be admonished by the court officer as to your probation conditions.
[Emphasis added.]
The written conditions of community supervision referred to in the trial court's colloquy with Appellant include payment of the fine as a condition of community supervision. Those conditions were signed by both the trial judge and Appellant on the same day as sentencing, and, taking the trial judge at his word, within minutes of the pronouncement. Thus, before he left the courtroom the day he was sentenced, Appellant had received notice from both the jury and the trial judge that he was required to pay the $10,000 fine.
4. We Uphold the Jury Verdict.
The context of the oral pronouncement in this case makes clear that Appellant, the State, and the trial judge understood the sentence to be what appeared in both the verdict and the judgment-ten years' confinement (with the trial court accepting the jury's probation recommendation) and a $10,000 fine. See Tex. Penal Code Ann. § 12.32 (providing range of punishment for first-degre felonies). We therefore resolve the discrepancy in favor of the jury verdict. See ion index="50" url="https://cite.case.law/citations/?q=Tex.%20Code%20Ann.%20%C2%A7%2012.32">id. ; Simmons , 2016 WL 3144254, at *2 (relying on Hill v. State , 213 S.W.3d 533, 536-37 (Tex. App.-Texarkana 2007, no pet.) ); Kimble , 2016 WL 2840922, at *2 ; see also Milczanowski , 645 S.W.2d at 447. We overrule Appellant's second point.
C. We Correct a Clerical Error in the Trial Court's Judgment.
The trial court's judgment recites that Appellant was found guilty of "MISAPPLICATION OF FIDUCIARY PROPERTY-OVER $200,000." As Appellant points out in his brief, under the section entitled "Statute for Offense," the judgment incorrectly refers to "32.43(c)(7) PC."
*792 The correct statutory provision is section 32.45(b) - (c)(7) as it existed at the time of the offense. See Tex. Penal Code Ann. § 32.45(b), Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 1.01, sec. 32.45(c)(7), 1993 Tex. Gen. Laws 3586, 3652-53 (amended 2015).
Appellate courts may modify incorrect judgments to make the record "speak the truth" when they have the necessary data and information to do so. Edwards v. State , 497 S.W.3d 147, 164 (Tex. App.-Houston [1st Dist.] 2016, pet. ref'd). Appellate courts have the power to modify whatever the trial court could have corrected by a judgment nunc pro tunc when the information necessary to correct the judgment appears in the record. Morris v. State , 496 S.W.3d 833, 836 (Tex. App.-Houston [1st Dist.] 2016, pet. ref'd). An appellate court's authority to modify incorrect judgments depends neither on a party's request nor on whether a party objected in the trial court. Edwards , 497 S.W.3d at 164. Accordingly, we delete the "32.43(c)(7) PC" from the judgment and replace it with "32.45(b)-(c)(7) PC." See ids="12181612" index="60" url="https://cite.case.law/sw3d/497/147/#p164">id. ; see also Chavarria v. State , No. 02-13-00463-CR, 2015 WL 1544204, at *4 (Tex. App.-Fort Worth Apr. 2, 2015, no pet.) (mem. op., not designated for publication) (deleting language from judgment that was not supported by the indictment or verdict).
III. Conclusion
Having overruled Appellant's two points, we affirm the trial court's judgment as modified.
KERR, J., filed a dissenting opinion.

In 2015, the legislature amended section 32.45(c)(7) ; the amount necessary for classifying the offense as a felony of the first degree was changed from "$200,000 or more" to "$300,000 or more." See Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 1.01, sec. 32.45(c)(7), 1993 Tex. Gen. Laws 3586, 3652-53, amended by Act of May 31, 2015, 84th Leg., R.S., ch. 1251, § 21, sec. 32.45(c)(7), 2015 Tex. Sess. Law Serv. 4208, 4217 (codified at Tex. Penal Code Ann. § 32.45(c)(7) (2016)). Appellant's offense occurred in 2007 and predated the amendment.

Agape World Group was a real-estate-investment company that the Evbuomwans owned.