

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

## No. 02-19-00461-CR
_____

MATTHEW NICHOLAS SLOAN, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from Criminal District Court No. 2
Tarrant County, Texas
Trial Court No. 1424732D

---

Before Sudderth, C.J.; Womack and Wallach, JJ.
Memorandum Opinion by Justice Wallach

**MEMORANDUM OPINION**

After receiving deferred-adjudication community supervision for state-jail-felony theft, Appellant Matthew Nicholas Sloan violated the terms of his community supervision by committing a new offense: credit-card or debit-card abuse. In a single point, Sloan now contends that he received ineffective assistance of counsel at his adjudication hearing because his attorney did not move to suppress the evidence of his credit-card or debit-card abuse, even though Sloan claims this evidence was unconstitutionally seized from his hotel room. However, Sloan's challenge suffers from a fatal flaw common to ineffective-assistance claims raised on direct appeal: an insufficiently developed record. Therefore, after correcting clerical errors in the judgment sua sponte, we affirm as modified Sloan's judgment of conviction.

## I. BACKGROUND

In November 2015, Sloan pled guilty to state-jail-felony theft and was placed on deferred-adjudication community supervision for four years. *See* Tex. Penal Code Ann. § 31.03(e)(4)(A). In May 2019, the State petitioned to adjudicate Sloan based on his commission of credit-card or debit-card abuse.[1] *See id.* § 32.31(b). Sloan pled "[n]ot true" to this allegation.

---

[1]The State's petition to adjudicate alleged three other violations of Sloan's community supervision in addition to credit-card or debit-card abuse. However, the State waived these three grounds before Sloan's adjudication hearing began, and the State proceeded only on the allegation of credit-card or debit-card abuse.

The State called two witnesses to prove its case at Sloan's adjudication hearing: (1) Officer Ryan Timmons, who had arrested Sloan for credit-card or debit-card abuse; and (2) Sergeant Charles Boykin, who had interviewed Sloan after his arrest.

Officer Timmons testified that he and his partner were dispatched to a local hotel because the hotel staff indicated that a guest—Sloan—had used a fraudulent card for his hotel reservation.[2] The hotel staff showed Officer Timmons the fraudulent charges in the computer system, then they accompanied Officer Timmons to Sloan's room. When Sloan opened the door, unleashing the smell of marijuana, the hotel staff identified him as the individual who had reserved the room using a fraudulent card. Officer Timmons asked Sloan for identification, and Sloan responded by pointing to his wallet on the bed. The officer entered the room to retrieve the wallet, then brought it back to Sloan and removed Sloan's identification. In doing so, Officer Timmons noticed an American Express card in the wallet, and Sloan confirmed this was the card that he had used to reserve the room.[3] Officer Timmons's partner took the card and tested it in the lobby of the hotel to confirm

---

[2]Officer Timmons further testified that when the hotel staff called the police, they reported that Sloan had used multiple fraudulent cards for prior bookings as well. However, the State did not offer testimony to prove when and if such prior instances of fraud had occurred.

[3]Before Officer Timmons visited Sloan's room, the hotel staff told him that Sloan's fraudulent card was an American Express.

3

that it was fraudulent. It was; the card had been programmed to pull money from an account other than that indicated on its face.

Officer Timmons then placed Sloan under arrest and, at Sloan's request, arranged for him to talk with a detective. Meanwhile, the officer collected other incriminating evidence—a laptop, a USB device designed to read the magnetic strips on credit and debit cards, and multiple blank credit or debit cards—from Sloan's hotel room.

On cross-examination, Sloan's counsel briefly questioned Officer Timmons regarding his initial entry into Sloan's hotel room. He asked Officer Timmons whether Sloan had willingly let him into the room to retrieve his identification or whether the officer had "push[ed] [his] way in." Officer Timmons stated that he had not pushed his way in and clarified that Sloan's front door "was already open," but the officer did not expressly address whether he had Sloan's consent to enter the room. Rather, Officer Timmons responded that, based on the smell of marijuana, he had "entered the room due to contraband possibly being there and to identify [Sloan]." The officer admitted, however, that "no marijuana was ever found."

Sloan's counsel then asked Officer Timmons what he had seen when he entered the room, but the officer could not recall; he remembered seeing clothes and a laptop bag on the bed, but he could not remember whether Sloan's laptop or card reader were also visible. Despite these gaps in Officer Timmons's memory, and

4

despite his indication that he was wearing a body camera, the video footage from Officer Timmons's body camera was not offered into evidence.

Sergeant Charles Boykin then testified regarding his interview with Sloan, and the trial court admitted the audio recording of the interview into evidence. In the interview, Sloan admitted using a fraudulent American Express card to reserve the hotel room, though he claimed that he had not reprogrammed the card himself and was not aware of the full extent of the fraud.[4]

After both sides rested and closed,[5] the trial court found the allegation of credit-card or debit-card abuse to be true. The trial court heard punishment evidence and then sentenced Sloan to two years' confinement.

Sloan filed a motion for new trial, alleging only that "[t]he verdict [sic] is contrary to the law and the evidence"; he did not allege ineffective assistance of counsel.[6] The motion was overruled by operation of law without a hearing. *See* Tex. Code Crim. Proc. Ann. art. 45.038(b).

---

[4]Sloan told Sergeant Boykin that he had met a man on Facebook who had promised that Sloan could "make some money" if he mailed the man $50 along with an empty prepaid credit card. The man from Facebook then mailed the card back and told Sloan to try using it—without specifying how much money was available for Sloan's use. Sloan acknowledged he "knew something was going on with the card" but stated that he "d[id]n't know too much" about the reprogramming. He explained that he had engaged in the fraud because he "was just kind of down on money."

[5]Sloan rested without calling any witnesses.

[6]A defendant is not required to raise ineffective assistance of counsel in a motion for new trial to preserve the issue for appeal; in fact, the Court of Criminal

## II. DISCUSSION

Sloan raises a single point on appeal: he claims that his trial counsel provided ineffective assistance by failing to move to suppress the evidence[7] that was found in and seized from Sloan's hotel room, allegedly in violation of the Search-and-Seizure Clause of the Fourth Amendment. *See* U.S. Const. amend. IV. However, the record is insufficiently developed to support Sloan's ineffective-assistance claim; instead, the record merely reveals clerical errors in the judgment.

### A. Ineffective Assistance

A defendant has a constitutional right to the effective assistance of counsel. U.S. Const. amend. VI; *Ex parte Martinez*, 330 S.W.3d 891, 900 (Tex. Crim. App. 2011). To establish ineffective assistance, an appellant must prove by a preponderance of the evidence that (1) his counsel's representation was deficient and (2) the deficiency prejudiced his case. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013). Both *Strickland* prongs must be affirmatively demonstrated by the record; the failure to

---

Appeals has recognized that "a post-conviction writ proceeding, rather than a motion for new trial, is the preferred method for gathering the facts necessary to substantiate . . . a Sixth Amendment challenge." *Robinson v. State*, 16 S.W.3d 808, 809–11 (Tex. Crim. App. 2000).

[7]Although the scope of the challenged evidence is unclear, Sloan appears to argue that his trial counsel should have moved to suppress everything found in his hotel room from the moment Officer Timmons entered the room to retrieve Sloan's wallet—including the fraudulent American Express card, laptop, card reader, and blank credit or debit cards.

prove either prong defeats the ineffective-assistance claim. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

To establish deficient performance, an appellant must prove that "counsel's representation fell below an objective standard of reasonableness based upon prevailing norms." *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998) (per curiam). Our review of counsel's representation is highly deferential; we indulge a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Ex parte Bowman*, 533 S.W.3d 337, 350 (Tex. Crim. App. 2017) (quoting *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066); *see Nava*, 415 S.W.3d at 307–08. This presumption generally "cannot be overcome absent evidence in the record of the attorney's reasons for his conduct." *Martinez*, 330 S.W.3d at 901. Consequently, "[d]irect appeal is usually an inadequate vehicle for raising [an ineffective-assistance] claim because the record is generally undeveloped." *Menefield v. State*, 363 S.W.3d 591, 592–93 (Tex. Crim. App. 2012) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)); *see Thompson*, 9 S.W.3d at 813–14. If the record is silent as to the attorney's reasons, the appellate court must presume that the conduct "'fell within the wide range of reasonable professional assistance' and . . . constituted sound trial strategy" unless the conduct was "so outrageous that no competent attorney would have engaged in it." *Prine v. State*, 537 S.W.3d 113, 117 (Tex. Crim. App. 2017) (quoting *Goodspeed*,

7

187 S.W.3d at 392, and *Thompson*, 9 S.W.3d at 813); *Menefield*, 363 S.W.3d at 593 (quoting *Goodspeed*).

In *Menefield*, for example, the appellant claimed that his trial counsel had performed deficiently by failing to object to a laboratory report that was admitted without the necessary testimony from its author.[8] 363 S.W.3d at 592. The Court of Criminal Appeals acknowledged that "[p]erhaps there was no good reason" for trial counsel's failure to object. *Id.* at 593. "Or perhaps," the court speculated, "[Menefield's] counsel realized that cross-examining [the author of the report] would not benefit his client" and chose not to object as a trial strategy. *Id.*; *see also Nava*, 415 S.W.3d at 308 (speculating possible reasons why defense counsel may have been acting reasonably by not identifying an objectionable juror). Ultimately, the court "d[id] not know why counsel [had] failed to . . . objec[t] because the record [wa]s silent on the matter"—"[n]either trial counsel nor the State ha[d] been given an opportunity [to] respond to appellant's [ineffective-assistance] allegation." *Menefield*, 363 S.W.3d at 593. Therefore, because counsel's actions *could* have been based on a reasonable trial strategy, the court presumed that they were, and the silent record could not overcome this presumption. *Id.* The undeveloped state of the record was thus fatal to Menefield's ineffective-assistance claim. *Id.*; *see also Nava*, 415 S.W.3d at 308 (holding

---

[8]The court of appeals agreed with Menefield and held that his trial counsel's failure to object to the laboratory report constituted ineffective assistance. *Menefield*, 363 S.W.3d at 592. The State petitioned the Court of Criminal Appeals for discretionary review. *Id.*

that the silent record could not support appellant's ineffective-assistance claim); *Bledsoe v. State*, 479 S.W.3d 491, 497 (Tex. App.—Fort Worth 2015, pet. ref'd) ("Because counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been grounded in legitimate trial strategy, we defer to counsel's decisions[.]").

As in *Menefield*, the record in this case is silent as to why Sloan's trial counsel decided not to move to suppress the seized evidence. *See* 363 S.W.3d at 593. And, as in *Menefield*, Sloan's trial counsel certainly *could* have had a competent reason for his actions based on a legitimate trial strategy. *See id.* Perhaps Sloan's counsel believed that Sloan was unlikely to prevail on a motion to suppress.[9] *See Mooney v. State*, 817 S.W.2d

---

[9]Perhaps, as the State argues, Sloan lacked standing to challenge the search at all since he reserved the room using a fraudulent credit or debit card.

"[A]n accused has standing to challenge the admission of evidence obtained by an 'unlawful' search or seizure only if he had a legitimate expectation of privacy in the place invaded." *Ex parte Moore*, 395 S.W.3d 152, 158–60 (Tex. Crim. App. 2013). Generally, a registered guest staying overnight in a hotel room has a legitimate expectation of privacy recognized as reasonable, and he therefore has standing to challenge an unlawful search or seizure under the Fourth Amendment. *Stoner v. California*, 376 U.S. 483, 489–90, 84 S. Ct. 889, 893 (1964); *Moore*, 395 S.W.3d at 159. However, just as "[a] defendant lacks standing to contest the search of a stolen vehicle," so too is a defendant's standing to object to the search of a fraudulently obtained hotel room questionable. *Hughes v. State*, 897 S.W.2d 285, 305 (Tex. Crim. App. 1994); *accord Busby v. State*, 990 S.W.2d 263, 270 (Tex. Crim. App. 1999); *Walbey v. State*, 926 S.W.2d 307, 312 (Tex. Crim. App. 1996); *see also Rakas v. Illinois*, 439 U.S. 128, 143 n.12, 99 S. Ct. 421, 430 n.12 (1978) (recognizing that although "[a] burglar plying his trade in a summer cabin during the off season may have a thoroughly justified subjective expectation of privacy . . . . [h]is presence . . . is wrongful[ and] his expectation is not one that society is prepared to recognize as reasonable" (internal quotation marks and citations omitted)).

9

693, 698 (Tex. Crim. App. 1991) ("Counsel is not required to engage in the filing of futile motions."). Or perhaps counsel felt that developing the circumstances of the search would not benefit his client for another reason. We have no way of knowing why Sloan's trial counsel did what he did; as in *Menefield*, counsel was not "given an opportunity [to] respond to appellant's allegation." *See* 363 S.W.3d at 593. However, because counsel's actions could have been based on a sound trial strategy, we must presume that they were; a silent record cannot overcome the "strong presumption" that counsel acted reasonably. *Prine*, 537 S.W.3d at 117; *Thompson*, 9 S.W.3d at 814; *see Menefield*, 363 S.W.3d at 593. Consequently, Sloan has not carried his burden to prove deficient performance.

Because "[f]ailure to make the required showing of . . . deficient performance . . . defeats the ineffectiveness claim," we overrule Sloan's sole issue.[10] *Thompson*, 9 S.W.3d at 814 (quoting *Strickland*, 466 U.S. at 700, 104 S. Ct. at 2071).

---

From the current, undeveloped state of the record, it is unclear whether Sloan had standing to object to the search of his hotel room, and we need not decide this issue to dispose of the appeal. *See* Tex. R. App. P. 47.1. However, Sloan's trial counsel—who we presume was aware of the full details of the search—may have known facts that resolved the standing issue against his client.

[10]Even if Sloan had carried his burden to prove deficient performance, his ineffective-assistance claim would fail because the record is insufficiently developed to determine the validity of the search—and therefore insufficiently developed to show prejudice.

To establish the prejudice prong of an ineffective-assistance claim based on counsel's failure to file a motion to suppress, the appellant must show a reasonable probability that the trial court would have granted the motion or abused its discretion

## B. Clerical Errors

We raise a second issue sua sponte: while reviewing the record, we noted clerical errors in the judgment. Specifically, the judgment states that Sloan pled "[t]rue" to the motion to adjudicate, that he entered an open plea to the court, and that the trial court found that Sloan had violated the terms of his community supervision as alleged in paragraph three of the State's "Original Motion to Adjudicate Guilt." The record, however, indicates that Sloan pled "[n]ot true" to the motion to adjudicate, that Sloan tried his case to the bench rather than entering an open plea,

---

by denying it. *Jackson*, 973 S.W.2d at 957; *see Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. The appellant thus bears the "burden to develop facts and details of the search sufficient to [allow the reviewing court to] conclude that the search was invalid." *Jackson*, 973 S.W.2d at 957 (rejecting ineffective-assistance claim because appellant failed to carry his burden to develop enough of the details of the search to show its invalidity). If the record is silent or insufficiently developed as to the circumstances of the search, we must presume "proper police conduct" and, in turn, presume that a motion to suppress would not have been granted. *Id.*

Sloan has failed to carry his burden to establish the circumstances of the search of his hotel room. Although Officer Timmons testified broadly about his interaction with Sloan and the items that he seized from Sloan's room, the facts and details of the search were not fully explored at the adjudication hearing. There are numerous reasons why the search—as it appears to have occurred based on the current state of the record—may have been constitutionally valid. *See, e.g.*, *supra* note 9. Or it may not have been. However, because the details of the search are insufficiently developed, we must presume that the police acted appropriately and therefore presume that the motion to suppress would not have been granted. *See Jackson*, 973 S.W.2d at 956–57; *see also Deaver v. State*, 314 S.W.3d 481, 486–87 (Tex. App.—Fort Worth 2010, no pet.). (holding appellant could not prove motion to suppress would have been granted based on a "limited, unclear record" that was "ambiguous" as to the circumstances of the alleged search). Thus, even if the record affirmatively demonstrated deficient performance, Sloan's ineffective-assistance claim would fail.

11

and that the trial court found that Sloan had violated the terms of his community supervision as alleged in paragraph three of the State's "First Amended Second Petition to Proceed to Adjudication."

We may correct clerical errors in a judgment to make the record "speak the truth" when, as here, we have the information necessary to do so. *Ette v. State*, 551 S.W.3d 783, 792 (Tex. App.—Fort Worth 2017), *aff'd*, 559 S.W.3d 511 (Tex. Crim. App. 2018); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd) (en banc); *see also French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) (agreeing with *Asberry* regarding appellate courts' authority to reform judgments and adopting *Asberry*'s reasoning). This authority "depends neither on a party's request nor on whether a party objected in the trial court." *Cain v. State*, Nos. 02-19-00258-CR, 02-19-00259-CR, 2021 WL 1034862, at *9 (Tex. App.—Fort Worth Mar. 18, 2021, no pet. h.); *Ette*, 551 S.W.3d at 792. We therefore modify Sloan's judgment to reflect what actually occurred; namely, to document that Sloan pled "[n]ot true" to the motion to adjudicate, to remove the erroneous reference to an open plea, and to recite that the trial court found that Sloan violated the terms of his community supervision as set forth in paragraph three of the State's "First Amended Second Petition to Proceed to Adjudication." *See* Tex. R. App. P. 43.2(b); *Alexander v. State*, 496 S.W.2d 86, 87 (Tex. Crim. App. 1973) (correcting judgment to reflect trial by jury and plea of "not guilty"); *see also Arent v. State*, No. 02-20-00023-CR, 2020 WL 6326151, at *1–

2 (Tex. App.—Fort Worth Oct. 29, 2020, no pet.) (mem. op., not designated for publication) (correcting judgment to reflect that appellant pled "not true").[11]

### III. CONCLUSION

Having overruled Sloan's sole issue, and having modified the judgment to reflect the record, we affirm the judgment as modified.

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: April 22, 2021

---

[11]Unpublished opinions have no precedential value. Tex. R. App. P. 47.7(a). Nonetheless, we consider unpublished opinions with similar facts instructive and cite them in agreement with their application of settled law. *See Cain*, 2021 WL 1034862, at *4 n.8.