# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH
### NO. 02-11-00303-CR


WILLIE EARL HALL JR.                                                APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

----------

### FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

----------

## OPINION

----------

In two points, appellant Willie Earl Hall Jr. appeals the trial court's "Judgment Revoking Community Supervision." We affirm.

### Background Facts

In 2008, when appellant was fifteen years old, the State filed a petition alleging that he had engaged in delinquent conduct. Appellant waived his rights to confront witnesses and to have a jury trial, and he entered into a plea bargain agreement with the State. The terms of the plea bargain included appellant's stipulation that he had committed aggravated sexual assault of a seven-year-old

child.[1]  Based on the plea bargain, the juvenile court adjudicated appellant to be delinquent, assessed a five-year determinate sentence, suspended that sentence for five years, and placed appellant on probation.[2]  Appellant's probation began on June 26, 2008.

In July 2010, pursuant to the State's motion and a hearing that appellant attended with counsel, appellant's probation was transferred to a district court (the trial court); the transfer order recognizes that appellant had already been "found to have engaged in delinquent conduct."[3]  In conjunction with the transfer of his probation to the trial court, appellant signed a document stating that he would comply with the conditions of his community supervision.

Although no document filed in the juvenile court had alluded to a deferral of that court's adjudication of appellant's delinquency, and although the record from the juvenile court clearly shows that appellant had been adjudicated delinquent, documents filed in the trial court after the transfer, including one document titled "Certificate of Proceedings," state that appellant had been placed on deferred adjudication in 2008.[4]  The trial court imposed several conditions on appellant's probation.

---

[1]See Tex. Penal Code Ann. § 22.021(a)(1)(B)(i), (2)(B) (West Supp. 2011).

[2]See Tex. Fam. Code Ann. § 54.04(d)(3), (q) (West Supp. 2011).

[3]See id. §§ 54.04(q), .051(a), (d) (West Supp. 2011).

[4]When a district court exercises jurisdiction over a juvenile through a transfer of the juvenile's probation under section 54.051 of the family code, the

In March 2011, the State filed a "Petition to Proceed to Adjudication," alleging that appellant had violated several terms of the probation. That petition asked the trial court to require appellant to show cause why the court should not proceed to the adjudication of his guilt. Two months later, the State filed its "First Amended Petition to Revoke Probated Sentence," which, unlike the first petition, prayed for the trial court to require appellant to appear and show cause why his "sentence should not be imposed and put into execution[] as the law provides."

In July 2011, the trial court held a hearing on the amended petition to revoke appellant's probated sentence, not the original petition to proceed to adjudication.[5] Toward the beginning of the hearing, appellant recognized that he had been placed on a "five-year straight probation" term while his sentence was suspended. Appellant pled true to several allegations contained in the State's amended petition and judicially confessed to them; on the record, he expressed his understanding that by entering pleas of true, the trial court could find that he violated the terms of his probation and could sentence him to up to five years' confinement. After appellant entered his pleas of true, the State rested. Appellant called a few witnesses to testify about his behavior and treatment while

district court "shall place the child on community supervision . . . for the remainder of the child's probationary period *and under conditions consistent with those ordered by the juvenile court*." *Id.* § 54.051(e) (emphasis added).

[5]Appellant recognized in his original brief that the State's second petition amended its first petition and that the trial court held a hearing on the second petition.

he was on probation. In closing arguments, appellant's counsel asked the trial court to allow appellant to remain on probation, but the trial court verbally found that appellant had violated the terms of his probation and sentenced him to four years' confinement.[6]

Although the trial court did not verbally purport to adjudicate appellant's guilt for aggravated sexual assault, the court originally entered a written judgment titled "Judgment Adjudicating Guilt." Appellant appealed that judgment, contending that the judgment was improper. In an abatement order, we agreed that the judgment was improper; we noted, in part, that double jeopardy bars a conviction for the same act for which a juvenile has been adjudicated delinquent. We explained in the abatement order that while the trial court had statutory authority to revoke appellant's probation and impose a prison sentence, it could not convict appellant of aggravated sexual assault. Because the trial court's original written judgment adjudicating guilt differed from the court's verbally expressed intentions at the end of the revocation hearing, we noted in our abatement order that the record suggested that a clerical error might have occurred. Therefore, we abated the appeal, remanded the case to the trial court, and ordered the trial court to conduct a hearing to determine whether the written

---

[6]If a transferred defendant who has been adjudicated delinquent violates the conditions of his probation, the district court may "reduce the prison sentence to any length." *Id.* § 54.051(e-2); *Krupa v. State*, 286 S.W.3d 74, 77 (Tex. App.— Waco 2009, pet. ref'd). The trial court's reduction of appellant's sentence from five years to four years indicates the court's awareness of the modified punishment range associated with section 54.051(e-2).

judgment contained a clerical error that was subject to correction. We notified the trial court that if it determined that the written judgment contained a clerical error, the court needed to correct the error through a nunc pro tunc judgment and make findings of facts and conclusions of law concerning its decision about whether the judgment contained a clerical error.

Upon our abatement, the trial court held a hearing in which it expressed,

> *The judgment [adjudicating guilt] does not reflect the intent of this Court, nor does it reflect what actually happened at juvenile.*
>
> Mr. Hall was on a determinate sentence probation which is what we would call in the adult system after transfer [of] a straight probation. It was entered in the clerk's record as a determinate sentence deferred adjudication which this Court believes to be impossible. That is incorrect. *It's a clerical error by the clerk.* That clerical order, unfortunately, was carried forward throughout the file, *which the Court's intent in this case, which was reflected in the revocation hearing, is that this is the straight probation that was transferred from juvenile.* This Court does not have any intent to change that, nor does this Court believe this Court has the power to change a finding of guilt that's already been entered into a deferred adjudication. *And every document thereafter that reflects a deferred adjudication, including the judgment adjudicating guilt, needs to be changed to be in conformity with the determinate sentence straight probation that Mr. Hall was on.* [Emphasis added.]

After the hearing concluded, the trial court signed a "Nunc Pro Tunc Order Correcting Minutes of the Court," which changed the title of the original judgment from "Judgment Adjudicating Guilt" to "Judgment Revoking Community Supervision." Appellant filed a supplemental brief in which he asserts two points and asks us to discharge him from custody and release him from further community supervision.

5

**The Propriety of the Nunc Pro Tunc Order**

In the first point of his supplemental brief, appellant argues that the trial court's original judgment adjudicating guilt was not the product of a clerical error. Appellant first contends that the "trial court at the [abatement] hearing did not address whether the signing of the judgment adjudicating guilt was . . . the result of a clerical error." We disagree with this factual contention; as shown above, during the abatement hearing, the trial court made clear on the record that the judgment adjudicating guilt did not reflect the intent of the court and that, instead, a clerical error had been "carried throughout the file." Also, the trial court's final conclusion of law, which the trial court entered after the abatement hearing, states, "In this case, because the intent of this Court was to continue Appellant's straight probation and have a normal recovation proceeding, this Court's judgment reflecting an adjudication of guilt was the product of a clerical error."

Appellant also argues that even assuming that the trial court stated that the signing of the judgment adjudicating guilt was a clerical error, the record does not support that statement, but it rather shows that the trial court made an error caused by judicial reasoning that could not be corrected through a nunc pro tunc order. The classification of an error as clerical or judicial is a question of law. *See Ex parte Poe*, 751 S.W.2d 873, 876 (Tex. Crim. App. 1988); *Alvarez v. State*, 605 S.W.2d 615, 617 (Tex. Crim. App. [Panel Op.] 1980). Clerical errors in judgments are subject to correction through judgments nunc pro tunc. *English v. State*, 592 S.W.2d 949, 955–56 (Tex. Crim. App.), *cert. denied*, 449 U.S. 891

6

(1980); *Johnson v. State*, 233 S.W.3d 420, 425–26 (Tex. App.—Fort Worth 2007, pet. ref'd); *In re Hancock*, 212 S.W.3d 922, 927 (Tex. App.—Fort Worth 2007, orig. proceeding).

A judgment may reflect a clerical error when it incorrectly records the judgment rendered, so long as a product of judicial reasoning is not involved. *See Alvarez*, 605 S.W.2d at 617. A court "renders" a judgment when "orally in open court or by written memorandum signed by [it] and delivered to the clerk, the [court] pronounces . . . a decision of the law upon given state of facts." *Westbrook v. State*, 753 S.W.2d 158, 160 (Tex. Crim. App. 1988) (Clinton, J., concurring) (citing *Comet Aluminum Co. v. Dibrell*, 450 S.W.2d 56, 58 (Tex. 1970)); *see also S & A Rest. Corp. v. Leal*, 892 S.W.2d 855, 857 (Tex. 1995) ("Judgment is rendered when the trial court officially announces its decision in open court . . . ."). The purpose of a nunc pro tunc judgment is to reflect the truth of what actually occurred in the trial court. *Alvarez*, 605 S.W.2d at 617. "The trial court cannot, through a judgment nunc pro tunc, change a court's records to reflect what it believes should have been done." *Collins v. State*, 240 S.W.3d 925, 928 (Tex. Crim. App. 2007). Thus, "before a judgment nunc pro tunc may be entered, there must be proof that the proposed judgment was actually rendered or pronounced at an earlier time." *Id.* (quoting *Wilson v. State*, 677 S.W.2d 518, 521 (Tex. Crim. App. 1984)). When a trial court corrects its records to reflect the truth of what happened in the court, the court is correcting a clerical error, not a judicial error. *See Poe*, 751 S.W.2d at 876; *see also In re Cherry*,

7

258 S.W.3d 328, 333 (Tex. App.—Austin 2008, orig. proceeding) (explaining that a "nunc pro tunc order can only be used to make corrections to ensure that the judgment conforms with what was already determined and not what should have been determined").

These cases illustrate that the question that we must resolve in determining the validity of the trial court's nunc pro tunc judgment is whether the nunc pro tunc judgment truthfully aligns with the judgment that the court originally rendered or, instead, whether the nunc pro tunc judgment changes, through judicial reasoning, the judgment that the court originally rendered. As we have explained above, the record from the revocation hearing indicates that the trial court and the parties understood that the State was proceeding on its amended petition, which sought only revocation of appellant's probation, and not on its original petition, which sought adjudication of his guilt. At the end of the revocation hearing, the trial court stated,

> Mr. Hall, the Court having received your pleas of true to Paragraphs 1, 2, 4, and 5, the Court will find those allegations to be true and find that you violated the terms and conditions of your probation.
>
> . . . .
>
> I'll set your sentence at four years['] confinement in the Institutional Division of the Texas Department of Criminal Justice.
>
> It will be the order of this Court that you be delivered by the sheriff of Tarrant County to the director of the Institutional Division where you'll serve your sentence as required by law.

As this excerpt from the record shows, in orally rendering its judgment, the

8

trial court did not purport to adjudicate appellant's guilt, which is what the original written judgment reflected. Instead, the court unambiguously revoked appellant's probation and sentenced him, and the nunc pro tunc order accurately reflects this judicial reasoning.

Thus, under the authority cited above, we hold that the trial court did not err by entering the nunc pro tunc order and changing the title of the judgment from one adjudicating guilt to one revoking community supervision. *Cf. Collins*, 240 S.W.3d at 928 ("It is clear from the record of the trial court that there was no clerical error that this judgment nunc pro tunc was correcting. The written judgment perfectly matches the judgment pronounced in court.").

Finally, we note that appellant did not object to the fact that the revocation hearing proceeded on the amended petition. He also did not object in the trial court to any nonconformity between the trial court's oral rendition of judgment that sentenced him to confinement by revoking straight probation and documents that had previously been filed in the case that indicated that he was on deferred adjudication. And appellant concedes that he had notice of the "term and conditions of his probation and [of] his required behavior to avoid being placed in jail."

For all of these reasons, we overrule appellant's first point.[7]

---

[7]In his original brief, appellant's sole point stated, "The document entitled Judgment Adjudicating Guilt was not authorized by law . . . ." Because we have held that the trial court did not err by entering its nunc pro tunc order, which

9

## Double Jeopardy

In his second point, appellant asserts that the "order of the trial court placing [him] on deferred adjudication probation as well as his subsequent conviction violated [his] rights to be free of double jeopardy."[8]  As we have explained,

> The Double Jeopardy Clause of the United States Constitution provides that no person shall be subjected to twice having life or limb in jeopardy for the same offense.  U.S. Const. amend. V.  Generally, this clause protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense.

*Washington v. State*, 326 S.W.3d 302, 311 (Tex. App.—Fort Worth 2010, pet. ref'd) (citing *Ex parte Cavazos*, 203 S.W.3d 333, 336 (Tex. Crim. App. 2006)); *see also Ex parte Wheeler*, 203 S.W.3d 317, 322 (Tex. Crim. App. 2006) ("The double jeopardy provisions of the federal and Texas constitutions protect a citizen from repeated attempts at prosecution for the same criminal offense.").

Appellant argues that he suffered a second prosecution for the same offense after conviction when, according to documents filed after the transfer of his suspended sentence and probation from the juvenile court, he was placed on

---

replaced the judgment adjudicating guilt with a judgment revoking community supervision, we overrule appellant's point from his original brief.

[8]Appellant cites double jeopardy provisions contained in the federal and state constitutions and in a state statute.  He does not argue that the state double jeopardy standard differs from the federal standard with respect to his issues raised in his point.

deferred adjudication and therefore faced the threat of being adjudicated guilty. The court of criminal appeals has concluded that double jeopardy bars a conviction for the same act for which a juvenile has been adjudicated delinquent. *See Ex parte Elizalde*, 594 S.W.2d 105, 106 (Tex. Crim. App. 1980) (op. on reh'g) (citing *Breed v. Jones*, 421 U.S. 519, 532, 541, 95 S. Ct. 1779, 1787, 1791 (1975)); *Van Hatten v. State*, 97 Tex. Crim. 123, 125, 260 S.W. 581, 582 (1924) ("[I]f a juvenile is proceeded against as a delinquent child . . . he cannot again be prosecuted by the state and convicted of a felony upon the identical offense upon which the delinquency conviction was predicated."); *see also* Tex. Fam. Code Ann. § 54.02(j)(3) (West Supp. 2011) (stating that a district court may initiate criminal proceedings over a juvenile only when "no adjudication concerning the alleged offense has been made"); *In re M.A.V.*, 88 S.W.3d 327, 329–30 (Tex. App.—San Antonio 2002, no pet.) (discussing *Breed*). Therefore, while the trial court had statutory authority to revoke appellant's probation and impose a prison sentence, *see* Tex. Fam. Code Ann. § 54.051(e-2), it could not convict appellant of aggravated sexual assault.

Appellant argues that the "record clearly reflects that [he] was charged with and convicted of the same offense for a second time." We disagree. As described above, the trial court explained in the abatement hearing that references to deferred adjudication after the transfer from the juvenile court were unintended clerical errors. The actual order transferring appellant's case from the juvenile court to the trial court did not reference deferred adjudication; it

11

correctly explained that appellant had already been adjudicated delinquent and had been placed on probation. The State sought revocation of the probation in its amended petition, which did not seek adjudication of guilt, and the trial court verbally rendered judgment in accordance with the amended petition. Finally, although the trial court's initial written judgment incorrectly stated that appellant had been adjudicated guilty despite the absence of any rendition of guilt from the trial court's record, the trial court has corrected that judgment through its nunc pro tunc order. For these reasons, we reject appellant's claim that the trial court's proceedings violated federal or state principles of double jeopardy, and we overrule his second point.

## Conclusion

Having overruled appellant's points in his original and supplemental briefs, we affirm the trial court's judgment.

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; WALKER and MCCOY, JJ.

PUBLISH

DELIVERED:  June 14, 2012

12