

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00533-CR

DAVID ROBERT KALNBACH                                                    APPELLANT

V.

THE STATE OF TEXAS                                                              STATE

----------

### FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

A jury found Appellant David Robert Kalnbach guilty of aggravated assault with a deadly weapon, assessed ten years' confinement as punishment, and recommended suspending his sentence and placing him on community supervision. The trial court entered judgment accordingly, suspending imposition on his sentence and placing Kalnbach on community supervision for ten years.

---

[1]*See* Tex. R. App. P. 47.4.

Around five years later, the State moved to revoke Kalnbach's community supervision, alleging that he had violated its terms by, on or about December 20, 2011,[2] intentionally or knowingly going within 500 feet of his estranged wife Audra's residence in violation of a protective order. After a hearing, the trial court entered judgment revoking Kalnbach's community supervision and ordered Kalnbach punished in accordance with the judgment and sentence originally entered in the case. This appeal followed.

## II. Revocation

In his first issue, Kalnbach argues that the protective order was not in effect when he allegedly violated it "because he was neither served with it nor was he aware of its effective date." In his second issue, he complains that the trial court improperly admitted testimonial evidence of the protective order contrary to the best evidence rule.

### A. Standard of Review

We review the trial court's decision to revoke community supervision for an abuse of discretion. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006). The trial court does not abuse its discretion if the order revoking community supervision is supported by a preponderance of the evidence, that is, if the greater weight of the credible evidence would create a reasonable belief

---

[2]The offense actually occurred on December 24, 2011, but Tarrant County Probation Officer Doug Jones, who prepared the information for the State's petition, inadvertently identified the offense date as the date that the protective order was issued, which was December 20.

that the defendant has violated a condition of his community supervision. *Id.* at 763–64; *Edwards v. State*, 54 S.W.3d 834, 835 (Tex. App.—Fort Worth 2001, pet. ref'd). In conducting our review, we view the evidence in the light most favorable to the trial court's ruling. *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). We defer to the trial court's resolution of disputed facts and to any reasonable inferences that can be drawn from those facts. *Cantu v. State*, 253 S.W.3d 273, 282 (Tex. Crim. App. 2008).

## B. Evidence

Parker County Sheriff's Deputy J. Guynes testified that on December 24, 2011, when he arrived at the residence in question in response to a call about the violation of a protective order, Kalnbach was less than 100 feet from the residence. The trial court admitted into evidence the December 20, 2011 final protective order from the Kalnbachs' divorce case, which, among other things, listed Audra Kalnbach as the protected party and set out a 500-foot distance requirement from her residence. The trial court also admitted into evidence the divorce case's December 7, 2011 temporary restraining order and order setting hearing for temporary orders and the divorce case docket record and entries, which showed that a restraining order and temporary protective order was signed on December 7, 2011, with a hearing on the final protective order set for December 15, 2011, and that the final protective order was entered on December

3

20, 2011.[3]  The docket entry includes the divorce judge's handwritten notes that Kalnbach represented himself pro se at the December 15 hearing and states, "Protective Order granted to W[ife]/No spousal support ordered/W[ife] to have exclusive possession of home and car.  [Wife's attorney] to submit order."

Deputy Guynes testified that when he asked Kalnbach why he was there, in addition to an oral explanation, Kalnbach handed him a packet of documents, which included a protective order.  Deputy Guynes stated that the protective order Kalnbach handed to him appeared to have been altered, with "void" stamped in a contrasting color near the distance requirement and signed by a Judge Roy Sanders.[4]  Deputy Guynes knew Judge Ben Akers, who had originally signed the order, but he was not aware of a Judge Roy Sanders in Parker County, so he contacted his supervisor, who told him that because it was Christmas Eve, they would "work it out of custody" and to send Kalnbach "back to where he came from, which was Tarrant County."  Deputy Guynes allowed Kalnbach to retain the documents and watched him leave the premises.

Deputy Guynes demonstrated on the State's exhibits where Judge Sanders's signature and the "void" stamps had been on the copy that Kalnbach

---

[3]The divorce case docket record also indicates that the citation for the final protective order had issued on December 21, 2011, but was then reissued on December 29, 2011, after it was returned unserved because of the wrong address.

[4]Kalnbach raised a hearsay objection to the testimony about the protective order and the markings the deputy described, and the trial court granted him a running objection.

4

showed him on December 24. He stated that the void stamps had a December 23 date and that the court designation with Judge Sanders's name was the District Court of Appeals, Northern District of Texas. The trial court took judicial notice of a list of judges serving in the federal district courts for the Northern District of Texas, which did not include a Judge Sanders.

After Kalnbach argued that there was no evidence that the final protective order was issued or that anything was pronounced at the December 15 hearing, the trial court reset the case for further consideration. When the hearing resumed, the trial court entered the record of the December 15, 2011 hearing into evidence.

The December 15, 2011 record reflects that Judge Akers presided over a final hearing on the protective order and that Kalnbach was present and represented himself pro se. Audra testified that Kalnbach, who had a history of violence, had moved out on October 31 and that when he returned on December 3, he had threatened her, her father, and her daughter. Kalnbach then testified that Audra had thrown him out but that she had called him before Thanksgiving and told him he could wash clothing at the house as soon as she left for her mother's house. Kalnbach told the trial judge, "[I]f I have to stay away from the house and all the people in this document, I don't have a problem with it. I'll stay away from it."

After the trial judge announced, "I will grant the protective order" in favor of Audra and her daughter and awarded Audra exclusive possession of the

residence, Audra's attorney told the trial judge that he had a proposed protective order that he would e-mail to the court. Kalnbach then asked, "The protective order that he has on the computer at his house, will it pretty much say the things that this does in here,[5] so I know how to follow it? The one that he's going to e-mail you from his computer?" After Audra's attorney agreed that the final order would appear as "what's in the application," Kalnbach stated, "As long as I have a set of instructions to follow."

Kalnbach again argued that the final protective order had not yet been "issued" under the family code at the time of the alleged offense on December 24 and that Judge Akers's statement to him "that he was going to grant the protective order" did not meet the family code's elements for issuance.

## C. Analysis

While Kalnbach agrees that formal service is not required when the State can show the defendant's actual knowledge or awareness of a protective order, he complains that "[h]ere, there was no record that [Kalnbach] knew of an order at all," because at the December 15 hearing, Kalnbach spoke of the order in the future tense without correction by the trial court or opposing counsel. Kalnbach contends that he was therefore entitled to believe that the new order would take effect upon service in accordance with chapter 85 of the family code, and he

---

[5]Based on the context of this statement, it appears that Kalnbach was referring to the application for protective order.

relies on *Small v. State*, 809 S.W.2d 253, 254 (Tex. App.—San Antonio 1991, pet. ref'd), to support his argument.

*Small* does not apply here because in that case, the court reversed Small's conviction for violating a protective order when the State had the burden to prove beyond a reasonable doubt that he had knowingly and intentionally violated the order and the record showed that prior to the alleged violation, Small had not received notice of the order or been served with a copy of it and that he had not otherwise received notice of what he was prohibited from doing from any source. *Id.* at 255–57. In contrast, in his appellate brief, Kalnbach admits that he knew a protective order was "in the works" and that he knew the order's specific terms,[6] just not its effective date. As noted above, the State's burden at the revocation hearing was to show by a preponderance of the evidence that Kalnbach had violated a term of his community supervision.

Further, with regard to the protective order's issuance under chapter 85, when the order has not yet been reduced to writing but the respondent is present at the hearing, "[t]he clerk of the court shall mail a copy of the order to the respondent . . . not later than the third business day after the date the hearing is concluded." Tex. Fam. Code Ann. § 85.041(c) (West 2008). Because the protective order hearing that Kalnbach attended was on Thursday, December 15,

---

[6]The record of the December 15 hearing also illustrates that Kalnbach was already familiar with the order's terms. *See Harvey v. State*, 78 S.W.3d 368, 373 (Tex. Crim. App. 2002) (requiring that the protective order respondent be given the resources to learn the order's provisions).

7

2011, under section 85.041(c), the order's mailing date should have been no later than Tuesday, December 20, 2011. *See id.*; *see also* Tex. R. Civ. P. 4. Therefore, the order's "issuance" had to be on or before that mailing date, and the record reflects that the judge in fact signed the order on December 20. *See Small*, 809 S.W.2d at 256 (stating that "the law is clear that a defendant is presumed to know statutory law"); *cf. Hall v. State*, 373 S.W.3d 168, 172 (Tex. App.—Fort Worth 2012, pet. ref'd) (rendition of judgment occurs either orally in court or in a signed order). Based on the evidence set out above, the trial court could have found by a preponderance of the evidence that under chapter 85, Kalnbach knew that a protective order with the same terms as the application for protective order—if not immediately in effect at the conclusion of the December 15 hearing—would be in effect by the time he appeared at his estranged wife's residence on December 24. We overrule Kalnbach's first issue.

With regard to Kalnbach's second issue, assuming without deciding that the trial court improperly admitted testimonial evidence about the allegedly marked-up protective order in Kalnbach's possession on December 24, because there remained ample evidence, as set out above, to support the trial court's revocation finding under the preponderance standard, the error—if any—was harmless. *See* Tex. R. App. P. 44.2(b); *Moon v. State*, 44 S.W.3d 589, 594–95 (Tex. App.—Fort Worth 2001, pet. ref'd) (stating that the admission of otherwise inadmissible hearsay is a nonconstitutional error and disregarded unless it affects the defendant's substantial rights). We overrule Kalnbach's second issue.

## III. Conclusion

Having overruled both of Kalnbach's issues, we affirm the trial court's judgment.

PER CURIAM

PANEL:  MCCOY, DAUPHINOT, and GARDNER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  June 20, 2013