

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00116-CR

_____

MIGUEL JUAREZ, Appellant

V.

THE STATE OF TEXAS

On Appeal from Criminal District Court No. 1
Tarrant County, Texas
Trial Court No. 1505648D

Before Gabriel, Kerr, and Womack, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

After the trial court adjudicated Appellant Miguel Juarez guilty and sentenced him to one year's confinement, it signed an order nunc pro tunc to reflect that Juarez initially had been placed on deferred-adjudication community supervision rather than "straight" community supervision.[1] In three issues, Juarez complains that the trial court's order nunc pro tunc was in error, that the order nunc pro tunc deprived him of due process and due course of law, and that the trial court imposed an illegal sentence. We will affirm.

---

[1]The terms "probation" and "community supervision" are synonymous and are generally used interchangeably. *Hongpathoum v. State*, Nos. 02-18-00061-CR, 02-18-00062-CR, 02-18-00063-CR, 2019 WL 2432152, at *1 n.1 (Tex. App.—Fort Worth June 6, 2019, no pet.). For readability purposes, we will refer to community supervision as probation in this opinion. *See Burch v. State*, 541 S.W.3d 816, 818 n.1 (Tex. Crim. App. 2017).

This case discusses two different probation types: "straight" probation and deferred-adjudication probation. The court of criminal appeals has explained the difference as follows:

> Under deferred-adjudication probation, a defendant is placed on probation without being found guilty. On the other hand, a person can also be placed on "straight" probation, but only after he is found guilty and is sentenced. This difference can be seen in the way the State revokes a defendant's probation. If a defendant violates a condition of his deferred-adjudication probation, the State files a motion to adjudicate in which it asks the judge to find the defendant guilty and to sentence him. However, if a defendant violates a condition of his "straight" probation, the State files a motion to revoke that probation and asks the judge to execute the defendant's sentence that has already been handed down.

*Id.* (citations omitted).

## Background

On September 1, 2017, Juarez pleaded guilty pursuant to a plea-bargain agreement to possession of less than one gram of methamphetamine, a state jail felony. *See* Tex. Health & Safety Code Ann. §§ 481.102(6), .115(a), (b); Tex. Penal Code Ann. § 12.35(a). According to the "Consultation Setting Plea Offer Acknowledgement" and the "Written Plea Admonishments," Juarez agreed to plead guilty in exchange for the State's recommendation that the trial court defer adjudicating his guilt and place him on two years' probation.

There is no reporter's record from the plea proceeding. But consistent with the written plea papers, the trial court's docket sheet reflects that Juarez pleaded guilty and that the trial court deferred adjudicating Juarez's guilt and placed him on two years' probation. Juarez's probation terms signed by the trial-court judge similarly indicate that the trial court had deferred adjudicating Juarez's guilt.[2] While the trial court's "Judgment of Conviction by Court—Waiver of Jury Trial" (the "conviction judgment") also reflects that the plea bargain's terms included two years' deferred adjudication, the conviction judgment states that the trial court found Juarez guilty; sentenced him to "State Jail Division, TDCJ" but gave no sentence length; suspended the sentence; and placed him on two years' probation.

---

[2]The "Conditions of Community Supervision" form has boxes to indicate whether a defendant's guilt had been adjudicated or deferred. Here, the box next to "DEFERRED ADJUDICATION" is marked.

3

In January 2018, the State petitioned to proceed to adjudication, ultimately alleging that Juarez had committed three probation violations. The State specified in its original and amended petitions that the trial court had deferred adjudicating Juarez's guilt and had put him on two years' probation.

At the adjudication hearing, the State and Juarez's trial counsel orally confirmed to the trial court that Juarez had been placed "on deferred." At the hearing's conclusion, the trial court found that one of the probation violations alleged in the State's amended petition was true, found Juarez guilty, and sentenced him to one year's confinement. The trial court's "Judgment Adjudicating Guilt" reflected these findings as well as the following:

> (1) The Court previously found the Defendant to be qualified for community supervision; (2) The Court DEFERRED further proceedings, made no finding of guilt, and rendered no judgment; (3) The Court issued an order placing Defendant on community supervision for a period of 2 Years . . . .

The same day the trial court signed its "Judgment Adjudicating Guilt," it signed a "Nunc Pro Tunc Order Correcting Minutes of the Court" in which it recognized that the conviction judgment used an incorrect form and that the trial court was replacing the conviction judgment with a corrected order. The trial court signed a corrected order—"Order of Deferred Adjudication" (the "deferred-adjudication order")—using the correct form. The deferred-adjudication order reflects that on September 1, 2017, the trial court had deferred adjudicating Juarez guilty and had placed him on deferred-adjudication probation.

4

Juarez has appealed and raises three issues: (1) the trial court deprived him of due process and due course of law by signing an order nunc pro tunc that materially altered the judgment subject to the petition to adjudicate after the adjudication hearing; (2) the trial court imposed an illegal sentence because the judgment subject to the adjudication hearing did not authorize any period of confinement; and (3) the trial court improperly used an order nunc pro tunc to correct a judicial error or omission. Because our disposition of Juarez's third issue informs our disposition of his other two issues, we address it first.

### The Propriety of the Nunc Pro Tunc Order

In this issue, Juarez complains that the trial court improperly used an order nunc pro tunc to correct the conviction judgment because the changes the deferred-adjudication order made to the conviction judgment were judicial rather than clerical.

"The purpose of a nunc pro tunc order is to correctly reflect from the records of the court a judgment actually made by it, but which for some reason was not entered of record at the proper time." *Ex parte Poe*, 751 S.W.2d 873, 876 (Tex. Crim. App. 1988). A judgment nunc pro tunc is the appropriate avenue to make a correction when the court's records do not mirror the judgment that was actually rendered. *See Alvarez v. State*, 605 S.W.2d 615, 617 (Tex. Crim. App. [Panel Op.] 1980).

Nunc pro tunc orders are meant to correct only clerical errors, not judicial ones. *See State v. Bates*, 889 S.W.2d 306, 309 (Tex. Crim. App. 1994); *see also Ex parte Dopps*, 723 S.W.2d 669, 670 (Tex. Crim. App. 1986) ("A nunc pro tunc order may be

5

used to correct clerical errors in a judgment, but not judicial omissions."). Whether the error is clerical or judicial depends on the nature of the error, not on who erred. *Gomez v. State*, 459 S.W.3d 651, 667 (Tex. App.—Tyler 2015, pet. ref'd). "A clerical error is one which does not result from judicial reasoning or determination." *Poe*, 751 S.W.2d at 876. In other words, a proper nunc pro tunc order simply ensures that the judgment conforms with what was already determined and not what should have been determined; "before a judgment nunc pro tunc may be entered, there must be proof that the proposed judgment was . . . actually rendered or pronounced at an earlier time." *Wilson v. State*, 677 S.W.2d 518, 521 (Tex. Crim. App. 1984). When a trial court corrects its records to reflect the truth of what happened in the court, the court is correcting a clerical error, not a judicial error. *Hall v. State*, 373 S.W.3d 168, 172 (Tex. App.—Fort Worth 2012, pet. ref'd). Whether an error is judicial or clerical is a legal question. *Poe*, 751 S.W.2d at 876; *Alvarez*, 605 S.W.2d at 617.

Here, Juarez argues that the trial court's deferred-adjudication order required judicial reasoning because the trial court's conviction judgment stated that the trial court had found him guilty and placed him on "straight" probation, while the deferred-adjudication order reflected that the trial court deferred adjudicating his guilt and placed him on deferred-adjudication probation. But, as described above, the record shows that the trial court originally deferred adjudicating Juarez's guilt and placed him on deferred-adjudication probation, but used the wrong form, signing a "Judgment of Conviction by Court—Waiver of Jury Trial" instead of a "Judgment

Adjudicating Guilt." The record also shows that both the State and Juarez understood that the trial court had deferred adjudicating him guilty and placed him on deferred-adjudication probation. At no time during the adjudication hearing did Juarez object to the trial court's considering the State's adjudication motion or complain that he was not on deferred-adjudication probation. We therefore conclude that the trial court's error in signing the conviction judgment was clerical. *See Willis v. State*, Nos. 2-02-117-CR, 2-02-118-CR, 2003 WL 22026595, at *4–5 (Tex. App.—Fort Worth Aug. 29, 2003, no pet.) (not designated for publication) (concluding that error was clerical where record showed that the trial court "merely used the wrong forms, signing judgments for regular community supervision instead of 'deferred' adjudication," the State and defendant agreed on deferred adjudication with community supervision, and parties believed defendant was originally given deferred adjudication). Thus, the trial court did not err by correcting the conviction judgment through an order nunc pro tunc. We overrule Juarez's third issue.

**Juarez's Constitutional Complaints**

In his first issue, Juarez asserts that the trial court deprived him of due process and due course of law by materially altering the judgment subject to the adjudication petition after the hearing on the petition. Juarez contends that because the conviction judgment reflected that he had been sentenced to no jail time, the trial court was not authorized to impose any confinement, and he thus did not have fair notice of the consequences of the adjudication hearing, which resulted in one year's confinement.

7

"Before any unfavorable nunc pro tunc orders are entered the person convicted should be given an opportunity to be present for the hearing, represented by counsel, in order to accord him due process of law." *Shaw v. State*, 539 S.W.2d 887, 890 (Tex. Crim. App. 1976). But if the trial court properly changed the order, remanding for a hearing would be a "useless task." *Homan v. Hughes*, 708 S.W.2d 449, 454–55 (Tex. Crim. App. 1986) (orig. proceeding). Here, even assuming that the deferred-adjudication order was "unfavorable" to Juarez, a hearing would be a useless task because, as explained above, the trial court properly entered the order nunc pro tunc to correct the record. *See id.*

Additionally, the record belies Juarez's appellate complaint that he did not have notice of the consequence of the adjudication hearing. As noted, the record reflects that the trial court had deferred adjudicating Juarez guilty and placed him on deferred-adjudication probation. The record from the hearing indicates that the trial court and the parties understood this and that the State was proceeding on its adjudication petition: the trial court announced that the hearing was on the State's adjudication petition, and the State and Juarez's trial counsel orally confirmed to the trial court that Juarez had been placed "on deferred." At the hearing's conclusion, the trial court found that one of the probation violations alleged in the State's amended petition was true and found Juarez guilty. Before sentencing Juarez to one year's confinement, the trial court asked, "Is there any legal reason the defendant should not be sentenced at

this time?" Juarez's trial counsel responded, "No, Your Honor." At no time did Juarez complain that he was not on deferred-adjudication probation.

Because the record reflects that Juarez was aware that the trial court had placed him on deferred-adjudication probation, he had fair notice of the hearing's consequences. Thus, the trial court's signing the deferred-adjudication order after the adjudication hearing did not deprive him of due process or due course of law. Accordingly, we overrule Juarez's first issue.

## Illegal Sentence

In his second issue, Juarez argues that the trial court imposed an illegal sentence because the one-year sentence exceeded the suspended confinement period in the conviction judgment. As we pointed out, the record reflects that on September 1, 2017, the trial court placed Juarez on deferred-adjudication probation. Thus, the trial court did not err by sentencing him to one year's confinement after adjudicating him guilty of possession of less than one gram of methamphetamine. *See* Tex. Health & Safety Code Ann. §§ 481.102(6), .115(a), (b); Tex. Penal Code Ann. § 12.35(a); Tex. Code Crim. Proc. Ann. arts. 42A.108, .110. *See generally Weed v. State*, 891 S.W.2d 22, 25 (Tex. App.—Fort Worth 1995, no pet.) ("Having previously deferred sentencing the defendant, the trial court is therefore free to consider the full range of offense-appropriate punishment, and is not confined to a prior order, as in [a] case with traditional probation."). We overrule Juarez's second issue.

9

## Conclusion

Having overruled Juarez's three issues, we affirm the trial court's judgment adjudicating guilt.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  August 22, 2019