

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-24-00071-CR

---

JAMES BRUCE LOONEY, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 97th District Court
Montague County, Texas
Trial Court No. 23-169-DCCR-0047

---

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

## MEMORANDUM OPINION

James Bruce Looney was the driver and sole occupant of a borrowed vehicle when Deputy Daniel Carter of the Montague County Sheriff's Office (MCSO) initiated a traffic stop.[1] Looney exited the vehicle and ignored commands to stop. Carter arrested Looney for evading arrest on foot. During the inventory search, officers found approximately 160 grams of methamphetamine in the trunk. Looney pled not guilty to manufacture or delivery of a controlled substance of four grams or more but less than 200 grams. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(d) (Supp.). The jury found Looney guilty, and he elected for the trial court to assess punishment. After hearing evidence on punishment, the trial court assessed a punishment of eighty years' imprisonment. Looney appeals, asserting that the evidence is insufficient to affirmatively link Looney to the methamphetamine found in the trunk. Because we find that the record reflects sufficient affirmative links to prove knowing possession of the methamphetamine, we affirm the trial court's judgment.

## I. Factual Background

On February 4, 2023, Deputy Carter was "monitoring traffic on US Highway 81 just north of the city of Bowie." Carter observed a red Ford Crown Victoria that did not move from a stop sign for "approximately two to three minutes," despite having many opportunities to do so. The vehicle turned south onto Highway 81, and Carter followed it. The vehicle then pulled onto the shoulder. As he was passing by the vehicle, Carter got the license-plate number and

---

[1]Originally appealed to the Second Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Supp.). We follow the precedent of the Second Court of Appeals in deciding the issues presented. *See* TEX. R. APP. P. 41.3.

recognized the driver as Looney, who he knew had an expired driver's license. Carter followed as Looney made a U-turn. Looney turned onto Indian Hills Road without using a turn signal. Carter attempted to initiate a traffic stop and caught up to Looney as he was pulling into an unknown driveway.[2] Carter got out of his vehicle and gave Looney multiple commands to stop, but Looney continued to walk quickly toward the residence. Looney looked at Carter and then entered the residence.

After Carter called for backup, Carter spoke with two women that exited the residence. The two women confirmed that Looney was driving the vehicle in question and that he was inside the residence. Deputy Ryan Blackburn, a patrol deputy with the MCSO, recognized one woman as Sarah Phillips and asked her to get Looney to come outside. Phillips knocked on the door, and Looney exited. Carter placed Looney under arrest for evading on foot. During a search incident to arrest, Carter found four .38 caliber bullets in Looney's pocket.

Carter determined that the vehicle was registered to Roy Stump. Carter testified that, since the vehicle was not at Looney's residence, or the owner's residence, the department's standard procedure required that the vehicle be towed. Sergeant Matt Sawyer and Deputy Blackburn performed an inventory search. After Sawyer opened the trunk, he found approximately 160 grams of methamphetamine. The larger portion was in a Ziploc bag that was sitting inside a black plastic reusable bag laying on top of other items in an open toolbox. The smaller portion was in a Ziploc bag found inside the same black plastic reusable bag that contained a baggie with a twist tie that matched a box of Ziploc bags also found inside the black

---

[2]Deputy Carter did not know who lived at the residence initially. He later found out that Colby Nunley lived at that address.

plastic reusable bag. Blackburn testified that the baggie with a twist tie was "packaged to sell at that moment." Next to the methamphetamine, there was a clear bag that contained an off-yellow colored powder. Testing revealed the substance to be calcium carbonate. An unloaded Colt .38 revolver was also found under the black plastic reusable bag. Investigator James Carpenter with the Wichita County District Attorney's Office testified that a "firearm is very common with individuals who are selling narcotics so they can protect their product and their money." None of the items were fingerprinted.

Herman Carrel, a forensic scientist with the Texas Department of Public Safety Crime Laboratory, testified that he tested the substance and that it was methamphetamine. It weighed approximately 159.98 grams. Deputy Blackburn testified that 160 grams of methamphetamine is not a user amount. Blackburn and Investigator Carpenter both testified that the calcium carbonate can be added to methamphetamine to create more product, which allows for more profit. Carpenter, who spent years undercover within the drug trade, testified that the bag that contained the larger amount of methamphetamine could hold a pound of methamphetamine.

Also, Deputy Blackburn grabbed a cell phone that Looney had in his hand as he was exiting the residence. Blackburn extracted the data from the cell phone and revealed a total of 205 calls in one day. Blackburn testified that that is an extremely high number of calls and found many suspicious text messages about "money transactions and fronting for items." According to Blackburn, the phone dump also showed that Looney had received text messages from Terri Johnson, Frank Casper, and Stump, whom Blackburn knew to be involved in narcotics activities. Johnson texted about fronting "that" "until tomorrow" and texted, "I can

4

bring you a carton of smokes right now, if that help, but I will pay you tomorrow, please." Casper texted, "My money in Alvord, brother, I get with you when I get." Stump texted, "Hey, Jimmy, the money is on the card, let me know when you get it."[3] Blackburn testified that he believed all the text messages involved the sale of narcotics.

## II. Standard of Review

In evaluating legal sufficiency of the evidence, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). We examine legal sufficiency under the direction of *Brooks*, while giving deference to "the responsibility of the [jury] to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson*, 443 U.S. at 319).

"[S]ufficiency of the evidence [is] measured by the elements of the offense as defined by the hypothetically correct jury charge . . . ." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

---

[3]Looney was known to go by the nickname Jimmy.

### III.    Applicable Law

"[A] person commits an offense if the person knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance listed in Penalty Group 1." TEX. HEALTH & SAFETY CODE ANN. § 481.112(a) (Supp.).  Methamphetamine is a substance in penalty group 1. TEX. HEALTH & SAFETY CODE ANN. § 481.102(6) (Supp.).

"To demonstrate possession of [methamphetamine] with intent to deliver, the State is required to show that (1) appellant knowingly or intentionally, (2) possessed, (3) . . . [ . . . methamphetamine], (4) in an amount of greater than four but less than two hundred grams, (5) with the intent to deliver the . . . [ . . . methamphetamine]." *Johnson v. State*, 583 S.W.3d 300, 307 (Tex. App.—Fort Worth 2019, pet. ref'd) (per curiam) (second and third alterations in original) (quoting *Kibble v. State*, 340 S.W.3d 14, 18 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd)); *see* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d).  "'Possession' means actual care, custody, control, or management."  TEX. PENAL CODE ANN. § 1.07(a)(39) (Supp.). "Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control." TEX. PENAL CODE ANN. § 6.01(b); *see Menchaca v. State*, 901 S.W.2d 640, 651 (Tex. App.— El Paso 1995, pet. ref'd) ("Possession means more than being where the action is; it involves the exercise of dominion and control over the thing allegedly possessed.").  "Mere possession of [a] vehicle in which contraband is found, [without] additional facts and circumstances" connecting the accused to the contraband, "will not support a conviction for possession." *Hernandez v. State*, 867 S.W.2d 900, 904 (Tex. App.—Texarkana 1993, no pet.).

6

"When the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005) (quoting *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. [Panel Op.] 1981)). "The number of factors present is not as important as the degree to which the factors tend to affirmatively link the accused to the contraband." *Williams v. State*, 906 S.W.2d 58, 65 (Tex. App.—Tyler 1995, pet. ref'd). "For evidence of sufficient affirmative links, each case must be reviewed on its own facts." *Id.* A nonexclusive list of factors that can be sufficient, either singly or in combination, to establish someone's possession of contraband include:

> (1) the contraband was in plain view or recovered from an enclosed place; (2) the accused was the owner of the premises or the place where the contraband was found; (3) the accused was found with a large amount of cash; (4) the contraband was conveniently accessible to the accused; (5) the contraband was found in close proximity to the accused; (6) a strong residual odor of the contraband was present; (7) the accused possessed other contraband when arrested; (8) paraphernalia to use the contraband was in view, or found on the accused; (9) the physical condition of the accused indicated recent consumption of the contraband in question; (10) conduct by the accused indicated a consciousness of guilt; (11) the accused attempted to flee; (12) the accused made furtive gestures; (13) the accused had a special connection to the contraband; (14) the occupants of the premises gave conflicting statements about relevant matters; (15) the accused made incriminating statements connecting himself or herself to the contraband; (16) the quantity of the contraband; and (17) the accused was observed in a suspicious area under suspicious circumstances.

*Muckleroy v. State*, 206 S.W.3d 746, 748 n.4 (Tex. App.—Texarkana 2006, pet. ref'd) (citing *Lassaint v. State*, 79 S.W.3d 736, 740–41 (Tex. App.—Corpus Christi–Edinburg 2002, no pet.)). "The affirmative link [ordinarily] emerges from an orchestration of several . . . factors and the

logical force they have in combination." *Villegas v. State*, 871 S.W.2d 894, 896 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). "[T]here is no set formula of facts that necessitate a finding of an affirmative link sufficient to support an inference of knowing possession." *Hyett v. State*, 58 S.W.3d 826, 830 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). "Rather, affirmative links are established by a totality of the circumstances." *Id.*

**IV.     Analysis**

In his first point of error, Looney asserts that the evidence at trial was insufficient to affirmatively link him to the controlled substance found in the trunk. Usually, "[t]he fact that the defendant is the sole occupant of the vehicle in which the drugs are found serves as evidence that he exercised control over that vehicle." *Grant v. State*, 989 S.W.2d 428, 433 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *see Whitworth v. State*, 808 S.W.2d 566, 570 (Tex. App.—Austin 1991, pet. ref'd) ("Possession of a key to a location at which contraband is found reasonably implies control over the contraband contained within that location.").

Although Looney was the sole occupant of the vehicle, it was undisputed that the vehicle did not belong to him, and no testimony established how long Looney had been in possession of the vehicle.[4] The vehicle was not in his exclusive possession. "To reason otherwise would mean that any individual driving a borrowed vehicle, or one others had used or accessed, was automatically responsible for anything that might be in the vehicle, whether or not there was any reason for the person to know." *Borrero v. State*, No. 06-12-00118-CR, 2013 WL 1343212, at *1 (Tex. App.—Texarkana Apr. 4, 2013, pet. struck) (mem. op., not designated for publication);

---

[4]Looney made the statement, "I should have stayed there at Roy's, man." That statement suggests a short amount of time, but the inference would require improper speculation.

*see Roberson v. State*, 80 S.W.3d 730, 736 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd)) ("Thus, appellant's status as the driver of the car is insufficient on its own to prove possession, but may help show legal sufficiency if combined with other evidence."). Therefore, additional facts are required to prove possession and knowledge.

The State admitted evidence of several affirmative links. The State affirmatively proved that Looney was the last known occupant of the vehicle and was present at the time of the search, which is not dispositive—but is a factor. *See Roberson*, 80 S.W.3d at 736. Nothing indicated the control of the vehicle was unlawful. The text messages from the owner (Stump) suggested lawful possession because he wanted his vehicle back without accusing Looney of taking it unlawfully.

The methamphetamine was recovered from "an enclosed space." *Espino-Cruz v. State*, 586 S.W.3d 538, 545 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd); s*ee Dixon v. State*, 918 S.W.2d 678, 681 (Tex. App.—Beaumont 1996, no pet.) (suggesting that the trunk is convenient access). Even though no direct testimony established Looney's access to the trunk, his statement "they can't search that car, don't give them the keys, Colby" provided a reasonable inference that he had possession of the vehicle's keys while he was driving, and the deputies did not have the keys. Since the record shows the deputies were able to access the trunk, the jury could infer that Looney could have accessed the trunk with or without the keys while in possession. *See Espino-Cruz*, 586 S.W.3d at 545 ("Officer Marshall testified that an officer popped the trunk latch from inside the car, from which a rational juror could infer that appellant would have been able to access the drugs without a key."). Also, Stump's text message to Looney indicated that Stump

9

needed to buy narcotics. The jury could infer that the methamphetamine did not belong to Stump based on his text message to Looney.

A large amount of methamphetamine was found in the trunk. Deputy Blackburn testified that approximately 160 grams of methamphetamine is not a user amount. *See Roberson*, 80 S.W.3d at 740 ("The amount of contraband found is a factor we can consider in determining if an affirmative link exists. . . . [T]his factor is more effective at establishing an affirmative link as larger quantities are involved." (Citation omitted)).

The methamphetamine was sitting on top of the firearm. Even though bullets are not paraphernalia, the closeness of its association established a link since the caliber bullet matched the firearm. However, since it was a common caliber without any specific link, this link is not dispositive.

Upon contact with law enforcement, Looney immediately fled and created distance between himself and the vehicle. That is consciousness of guilt. *Figueroa v. State*, 250 S.W.3d 490, 503 (Tex. App.—Austin 2008, pet. ref'd) ("[A]ppellant's attempt to flee from the police prior to his arrest, a fact from which the jury could have inferred a consciousness of guilt."). While in custody in the back of the police vehicle, Looney stated that (1) "they catch me in the car . . . F them"; (2) "I should have stayed there at Roy's, man"; and (3) "wonder who F'd me" off. Investigator Carpenter testified that he believed Looney's last comment meant that "[Looney] believe[d] somebody snitched on him or an informant was used to tell the officers he was transporting narcotics." The jury could properly infer those were incriminating statements about the possession of methamphetamine in the trunk—especially since that was the only contraband

10

found during the search. *See Villarreal Lopez*, 267 S.W.3d at 96; *Canchola v. State*, No. 13-06-040-CR, 2006 WL 4663341, at *4 (Tex. App.—Corpus Christi–Edinburg Aug. 17, 2006, no pet.) (mem. op., not designated for publication).

Therefore, the combined force of all the affirmative links would allow a jury to find that Looney had the requisite knowledge and the possession and control of the contraband. We conclude that the record reflects sufficient evidence to support the verdict. As a result, we overrule Looney's first point of error.

## V.    Modification of the Judgment

Looney argues that the judgment should be modified to reflect that Looney entered a plea of "not guilty." The State agrees. "We have the authority to reform the judgment to make the record speak the truth when the matter has been called to our attention by any source." *Rhoten v. State*, 299 S.W.3d 349, 356 (Tex. App.—Texarkana 2009, no pet.) (citing *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992)). "The Texas Rules of Appellate Procedure also provide direct authority for this Court to modify the trial court's judgment." *Id.* (citing TEX. R. APP. P. 43.2). Under the section "Plea to Offense," the judgment states that Looney pled "GUILTY." According to the record, Looney pled not guilty. As a result, we modify the judgment by modifying the entry under "Plea to Offense" to "NOT GUILTY."

We note three clerical errors not argued by either party. "A clerical error is one which does not result from judicial reasoning or determination." *See Ex parte Poe*, 751 S.W.2d 873, 876 (Tex. Crim. App. 1988) (orig. proceeding). Appellate courts have the power to correct clerical errors. *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993). This authority does

not depend "on a party's request nor on whether a party objected in the trial court." *Cain v. State*, 621 S.W.3d 75, 88 (Tex. App.—Fort Worth 2021, pet. ref'd) (quoting *Ette v. State*, 551 S.W.3d 783, 792 (Tex. App.—Fort Worth 2017), *aff'd*, 559 S.W.3d 511 (Tex. Crim. App. 2018)); *see also Hall v. State*, 373 S.W.3d 168, 171–72 (Tex. App.—Fort Worth 2012, pet. ref'd) ("A judgment may reflect a clerical error when it incorrectly records the judgment rendered, so long as a product of judicial reasoning is not involved.").

First, nothing in the record suggests that a conviction for this offense requires sex-offender registration or that Looney had any prior sex offenses that require sex-offender registration. Second, there is no selection under the heading "**Punishment Assessed by Jury / Court / No election**." Looney filed an election of punishment for the trial court to assess his punishment, and the trial court assessed Looney's punishment.

Third, the box next to the statement "The Court **ORDERS** Defendant's sentence **EXECUTED**" in the judgment is not selected. The record is clear that the trial court sentenced Looney and intended for his sentence to begin immediately as the Court stated at punishment, "[Y]our sentence will commence today."

Accordingly, we modify the judgment by (1) deleting the sex-offender registration requirement, (2) selecting the box to indicate that the trial court assessed the punishment, and (3) selecting the box next to the statement, "The Court **ORDERS** Defendant's sentence **EXECUTED**."

## VI.    Conclusion

As modified, we affirm the trial court's judgment.

Jeff Rambin
Justice

Date Submitted:    December 2, 2024
Date Decided:    January 14, 2025

Do Not Publish